### PHINNEY v. MUTUAL LIFE INS. CO. OF NEW YORK.

#### (Circuit Court, D. Washington, N. D. March 26, 1895.)

#### No. 418.

1. PLEADING—CONCLUSION OF LAW.

   An answer, in an action on an insurance policy, which alleges merely that the contract was waived, abandoned, and rescinded, is bad, as alleging only conclusions of law.

2. SAME.

   An answer which merely attacks the constitutionality of a statute on which the plaintiff's claim is supposed to rest is bad, as alleging only matter of law, and not facts.

3. CONTRACTS—LAW OF PLACE—LIFE INSURANCE POLICY.

   The M. Life Ins. Co., a New York corporation, issued a policy of life insurance to one P. The application for the policy was made and signed in the state of Washington, and transmitted to New York. The policy was written in New York, and transmitted to Washington, where it was delivered to P., and the first premium was collected. The policy provided that the premiums, and the insurance when it accrued, should be paid in New York, and that proof of death should be made there. The application, which, by the terms of the policy, was made part thereof, declared that it was made subject to the charter of the insurance company and the laws of New York. *Held*, that the contract, as to all matters relating to its performance, was governed by the law of New York, and was therefore subject to a statute of that state, making it a condition of the right of the company to forfeit the policy for nonpayment of premiums that a certain notice of the accruing of premiums should be given, notwithstanding the policy contained a waiver of any other notice than the terms of the policy itself.

4. STATUTES—WAIVER OF CONDITION—PUBLIC POLICY.

   The condition imposed by such statute, being in pursuance of a general policy, cannot be waived by an individual, though intended for his benefit.

**5.** CONSTITUTIONAL LAW — EQUAL PROTECTION OF THE LAWS — NOTICE OF INSURANCE PREMIUMS.

The statute of New York, requiring life insurance companies, doing business in that state, to give notice to the holders of policies of the accruing of their premiums, as a condition of the right to forfeit the policies for nonpayment of premiums, is not a violation of the constitution of the United States, as operating unequally upon companies of New York and of other states doing business therein.

**6.** LIFE INSURANCE—BREACH OF WARRANTIES.

Breach of warranties does not ipso facto render the policy void, in the absence of any express stipulation to that effect either in the application or policy, but merely makes it voidable; and the insurer remains liable, unless he seasonably manifests an intention to rescind the contract, and .tenders back the premium. Reaffirming Selby v. Insurance Co., 67 Fed. 490.

This was an action by Nellie Phinney against the Mutual Life Insurance Company of New York on a policy of insurance. The plaintiff demurred to the defendant's answer.

S. Warburton, for plaintiff.

Strudwick & Peters, for defendant.

HANFORD, District Judge. This case was argued upon demurrer to the affirmative defenses in the answer.

The second affirmative defense pleads no facts. A mere naked conclusion that the contract of insurance was waived, abandoned, and rescinded is alleged. That is not a good pleading, and for that reason the demurrer to that defense is sustained.

The third affirmative defense pleads a breach of warranty as a defense, and, in accordance with the opinion which I have filed in the case of Christine Selby against this same defendant (67 Fed. 490), 'that defense is insufficient. The case is exactly like the Selby Case, and comes within the rule that I have given in the opinion in that case. On that ground the demurrer to the third affirmative defense is sustained.

The fourth affirmative defense is entirely made up of conclusions of law. This defense anticipates the claim and contention of the plaintiff (which is not set out in any other part of the pleadings) in regard to the effect of the New York statute upon life insurance policies issued by companies doing business in that state, and attacks the statute for being repugnant to the constitution of the United States, and void. This is entirely a matter of law, and contains no facts constituting a defense. The demurrer to that defense is sustained on that ground.

Now I go back to the first affirmative defense. This sets forth the place and the manner of the making of the contract, and the terms of the contract. It shows that the application for insurance was written and signed by Mr. Phinney in the state of Washington, and transmitted through a local agency of the insurance company in this state to the general Pacific coast agency in San Francisco, and thence to the home office in New York. The policy was written in New York, and transmitted through the general Pacific coast agency in San Francisco to the local agency in this state, and delivered to Mr. Phinney, and the first premium upon the

policy was collected in this state.    By the terms of the policy the premiums are payable annually, on a specified day, and the policy is to be void if the premiums are not paid.    It shows that two annual premiums, after the first one, accrued before Mr. Phinney's death, and were not paid.    It shows also that the policy contains a provision that notice that the premiums are due and payable on the dates mentioned in the policy is given and accepted by delivery of the policy, and any other notice or obligation to give notice is waived.    Now, that is a complete defense under the general law governing the making of contracts.    An agreement to insure, upon condition that the insured shall make periodic payments of premiums, binds the insurer only if the premums are paid, and failure to pay the premiums avoids all liability, and relieves the insurer of all liability to pay.    But the state of New York has made a statute of a radical nature, intended to check somewhat the large accumulation of money in the hands of life insurance companies through forfeitures of premiums, by giving the people dealing with these companies some percentage of advantage, making it a condition of the right of an insurance company to avoid the policy and forfeit the premiums that have been paid that the company shall issue a certain prescribed kind of notice; and the decisions of all the courts of this country, in New York and other states and the federal courts, tend to sustain this law, and to hold the insurance companies to a strict compliance with the statute, as a prerequisite condition to the avoidance of a policy for nonpayment of premiums. In numerous cases it has been adjudged that the insurance company is liable notwithstanding the failure to pay premiums when due, by reason of their failure to prove that the notice was sent as required by the statute.    So that, under the law of New York, this defense is insufficient, because it does not allege that the insurance company sent the notices prescribed by the statute of New York. There being this difference between the general law of contracts and the law of New York, the question is squarely raised whether this contract and the rights of the parties are to be in accordance with the statute of New York or with the general law of contracts, which is the law of the state of Washington.    The defendant contends that this is a Washington contract, because the contract was made here.    It was made here because the last act necessary to complete the making of the contract was in this state, and according to all the rules and authorities it is the law of the place of the contract, in the sense that this is the place where the contract was made; and it is a general rule of law that contracts are subject to the laws of the place where made, as regards the formalities necessary, in entering into a contract, to bind the parties, and as to the validity of the contract itself.    The law of the place where the contract is made is also the law by which the contract must be construed, and by which the obligations of the parties are to be determined, unless it appears that they have contemplated, at the time of making the contract, a different law; and usually it is understood that they do contemplate a different law to govern the liability of the parties where they expressly contract that the perform-

ance is to be at a place where there is a different law. I must decide this case according to what appears from the pleadings to have been the intent of the parties as to what law should govern its construction, and determine the obligation of the parties as to performance. In the first place, it is expressly provided that the premiums to be paid are payable at the home office of the company in New York; that the amount of money which the insurance company agreed to pay as insurance shall be payable at the company's office in New York, and proof of the death is to be made there; so that in all particulars this contract is to be performed in New York. New York, therefore, is the place of the contract in the sense that it is the place at which the parties agreed to perform their contract on both sides,—pay the money for the premiums there, and pay the insurance, if any accrues, there. In addition to that, the application for the insurance, signed by Mr. Phinney, contains the declaration that the application is made to the Mutual Life Insurance Company of New York, subject to its charter and the laws of New York. This application, by its own terms, and by the express provisions of the policy issued upon it, is a part of the contract.

It is contended that the parties have not adopted the law of New York as to the policy, but only as to the application. I can hardly understand why parties would intentionally complicate a contract by making the law of New York applicable to one part of it, and yet have it in other respects governed by the laws of the state of Washington. It is not made to appear to me in any way what particular law of New York they wanted to avoid by having the contract executed here, or what particular law of the state of Washington they wanted to avoid by having the application made subject to the laws of New York. If there was any such intention, it would look as if this provision made by the company in the printed blank which they used for making the application was an intentional trick to operate against the insured in any way in which the laws of New York would be prejudicial to him without binding the company to the strictness prescribed by the laws of New York, so far as they operate in favor of the insured. If I should give the contract such a construction, I do not think that it would be fair. There is, at least in the contract itself, evidence that the parties had in contemplation the law of New York as an element of the contract, and by having expressly provided that the contract is to be performed in New York they have made the laws of New York the law of the place of the contract, so far as it affects the obligation of the parties in respect to performance. The law of New York, by its terms, applies to all life insurance companies transacting business in that state. It is contended that this statute, if it is made to apply to contracts of life insurance entered into outside of the state, is unconstitutional, because it will not operate equally upon all life insurance companies doing business in New York; that the legislature has not the power to prescribe an obligation of this kind to affect a Connecticut life insurance company doing business in New York and also doing business in the state of Washington, as regards the contracts of the Connecticut

company made in Washington, and that, therefore, a home company would be placed at a disadvantage, as compared with a company of a different state, transacting business in New York. I think that argument is based upon false premises. I think that the binding force of the statute applies to all companies equally. It applies to all New York companies as to all business which they do in that state, and it applies to Connecticut companies as to all business that they do in New York. I think that if a Connecticut company, having an office in New York, writing and issuing policies there, collecting premiums there, and doing all the business of life insurance companies in the state of New York, should receive an application at its office in New York from Washington, act upon it there, issue a policy there, which by its terms would be performed in the state of New York, the contract would be governed by the law of New York, just the same as though its incorporation was under the law of New York, instead of being under the law of Connecticut. This statute has been upheld by so many decisions that it is beyond question a valid statute with respect to all business transacted within New York. Now, this transaction, although the contract was made in the state of Washington, is business done in New York. The policy was written there; the default of the insured, and right of forfeiture, could only occur in New York, because there could be no default in payment until, on the date when the premiums were due, the insured failed to pay the premium in New York. There is where the default occurred upon which alone this company can claim to be released from its liability under the policy. This subject of the law of the place of contracts has received attention from the supreme court of the United States in a number of cases, and the difference between cases where the law of the contract is the law of the place where the contract is entered into and those in which the contract is governed by the law of the place of performance is illustrated in a number of decisions,—in some of the older decisions as well as the late ones. One of the clearest expositions of the law is to be found in the opinion of Mr. Justice Hunt in the case of Scudder v. Bank, 91 U. S. 406. In the course of the opinion, Justice Hunt makes this statement:

"The rule is often laid down that the law of the place of performance governs the contract. Mr. Parsons, in his treatise on Notes & Bills, uses this language: 'If a note or bill be made payable in a particular place, it is to be treated as if made there, without reference to the place at which it is written or signed or dated.' Page 324. For the purpose of payment and the incidents of payment, this is a sound proposition. Thus the bill in question is directed to parties residing in St. Louis, Mo., and contains no statement whether it is payable on time or at sight. It is, in law, a sight draft. Whether a sight draft is payable immediately upon presentation, or whether days of grace are allowed, and to what extent, is differently held in different states. The law of Missouri, where this draft is payable, determines that question in the present instance. The time, manner, and circumstances of presentation for acceptance or protest, the rate of interest when this is not specified in the bill, are points connected with the payment of the bill; and are also instances to illustrate the meaning of the rule that the place of performance governs the bill. The same author, however, lays down the rule that the place of making the contract governs as to the formalities necessary

to the validity of the contract. Thus, whether a contract shall be in writing, or may be made by parol, is a formality to be determined by the law of the place where it is made. If valid there, the contract is binding, although the law of the place of performance may require the contract to be in writing. Dacosta v. Davis, 24 N. J. Law, 319. So when a note was indorsed in New York, although drawn and made payable in France, the indorsee may recover against the payee and indorser upon a failure to accept, although by the laws of France such suit cannot be maintained until after default in payment. Aymar v. Sheldon, 12 Wend. 439. So if a note, payable in New York, be given in the state of Illinois, for money there lent, reserving ten per cent. interest, which is legal in that state, the note is valid, although but seven per cent interest is allowed by the law of the former state. Miller v. Tiffany, 1 Wall. 310; Depau v. Humphreys, 8 Mart (N. S.) 1; Chapman v. Robertson, 6 Paige, 634; Andrews v. Pond, 13 Pet. 65. Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought. A careful examination of the well-considered decisions of this country and of England will sustain these positions."

That case has been referred to, and the distinction is further brought out in a later decision of the supreme court in Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102. It is also referred to, and its doctrine is recognized as sound, in the case of Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, where Mr. Justice Gray reviews the American and English decisions. His application of the rule may seem to be inconsistent with my conclusion in this case. The supreme court certainly held in that case that the law of the place of making the contract governed as to the validity of a stipulation by which one party agreed in advance to waive all claim for damages by reason of a breach of the contract by the other party. The principle of that case would be applicable to the case we have in hand if the conditions were exactly the same; but they are not. That was a contract of a carrier for transportation of merchandise from New York to England. The performance began in New York, and was to have been finally completed in England. There is a difference between the law of this country and the law of England as to the right of a carrier to exempt itself entirely from liability for damage caused by negligence of its servants. The supreme court applied the laws of this country, and nullified a provision in the bills of lading by which the carrier sought to be thus exempted. I do not think, under the principles recognized by the supreme court, the case would have been so decided if it had been a contract which was to have been entirely performed in England. The opinion makes it very plain that the court intended to rest its decision upon the facts that the contract was made in New York, the shipowner having a place of business there, and the shipper being an American. The contract was single; its principal object, the transportation of goods, being one continuous act, to begin in New York, to be chiefly performed on the high seas, and to end at Liverpool; and there was nothing in the contract or surrounding circumstances tending to show that the parties looked to the law of England, or to any other law than that of the place where the contract was made.

The case of Scudder v. Bank is cited with approval by the supreme court in the opinion of the supreme court in Coghlan v. Railroad Co., 142 U. S. 101, 12 Sup. Ct. 150. The syllabus reads:

"When a contract for the payment of money at a future day, with interest meanwhile payable semiannually, is made in one place, and is to be performed in another, both as to interest and principal, and the interest before maturity is payable according to the legal rate in the place of performance, the presumption is, in the absence of attendant circumstances to show to the contrary, that the principal bears interest after maturity at the same rate."

And that is shown to be so, because the law of the place of performance governs the contract as to the manner of performance. The opinion is by Mr. Justice Harlan, and he reviews a great many decisions, and squarely recognizes the doctrine laid down by Judge Hunt and by Judge Matthews in the cases above referred to, and shows that it is in harmony with the decision of the supreme court by Judge Gray in the case of Liverpool & G. W. Steam Co. v. Phenix Ins. Co.

The waiver of notice is in the policy itself, and the provisions of the statute must prevail, notwithstanding a waiver of notice in the contract; and that is upon a principle, recognized in a number of decisions of the supreme court of the United States, that parties cannot make a contract whereby the requirements of a statute which is made in pursuance of a general policy can be evaded. This waiver of notice is contrary to the policy of the law of New York, and, although it is a provision made for the benefit of individuals, the individuals cannot, by their contracts, abrogate the positive provisions of a statute. The reasons for this rule are well stated by Mr. Justice Gray in the opinion of the supreme court in the case of Liverpool & G. W. Steam Co. v. Phenix Ins. Co., supra, in which it was held that the policy of the laws of this country is against carriers making contracts in advance, securing exemption from liability for their own negligence. That was a case where the shipper expressly contracted to relieve the carrier from all risk and all liability resulting from the negligence of officers or crew of the ship or agents of the company handling the merchandise. Notwithstanding that contract, the supreme court held that the laws of the country in which the contract was made forbid such contracts. It is certainly the policy of the New York law to prohibit insurance companies from avoiding their policies for nonpayment of premiums where they fail to give the notice prescribed. I hold that the law of New York is applicable to this contract, and the defense is not sufficient, because it would not be a good defense in New York. The demurrer is sustained.

Mr. Strudwick: I call your honor's attention also to the fact that the demurrer to the second, third, and fourth affirmative defenses was rested in part upon the ground that by the provision of this policy the policy was incontestable after a certain length of time, and I submitted at the time the reasons why I did not think that clause would prohibit the setting up of these defenses if they

were otherwise valid, and I would like to know what conclusion your honor reached upon that proposition.

The Court:    I think the incontestable clause in the contract was intended to shut off such a defense as you have set forth in the second affirmative defense after two annual premiums have been paid.    I do not think the company would be bound by the clause, or precluded from contesting the liability within any length of time, unless the policy had been lived up to on both sides for two years.    The second premium would have to be paid in order to give the insured the right to shut off a defense by virtue of that clause.