SECURITY HOLDING CO., OF BERESFORD, Appellant, v. CHRISTENSEN, Respondent.

(219 N. W. 949.)

(File No. 6476. Opinion filed June 23, 1928.)

*Caldwell, Caldwell & Burns,* of Sioux Falls, for Appellant.

*Bogue & Bogue,* of Parker, and *A. B. Carlson,* of Canton, for Respondent.

BROWN, J. On October 22, 1919, at Viborg, S. D., defendant executed two promissory notes for $6,250 each, payable to the order of Midland Packing Company, and due on or before October 22, 1920. The notes were delivered to J. M. Spellings, an agent for the sale of stock in Midland Packing Company, who on the same day took them to Beresford, S. D., and discounted them to Security State Bank of Beresford. With each note he delivered to the president of the bank, with whom the transaction was had, a paper slip reading as follows:

"October 22, 1919.

"To any Bank or Banker:

"You are at liberty to purchase my note of this date for $6,250.00 given to Midland Packing Co., if you desire. .There are no offsets or conditions against this note.

"[Signed] Martin Christensen.

"Address : ——————.''

One of these slips is designated in the record Exhibit C, and will be so referred to in this opinion.

At the time of delivery to the Security State Bank, the notes were indorsed, "Midland Packing Company, without recourse, per J. M. Spellings." After the commencement of this action by the bank, the Security Holding Company, a corporation, took over some of the charged-off notes of the Security State Bank, among which were the two notes involved in this action, and was substituted as plaintiff in place of Security State Bank.

On the trial of the action on October 27, 1926, the court directed a verdict for the defendant, upon which judgment was entered, and, from the judgment and an order denying a new trial, plaintiff appeals.

It is conceded by appellant that the notes were obtained by false and fraudulent representations, such as would constitute a complete defense, unless appellant is a holder in due course, or unless respondent is estopped by Exhibit C from setting up any defense.

■ Spellings was not authorized in writing to transfer or indorse notes of the Midland Packing Company, and therefore Security State Bank was not a holder in due course. State Bank of Alcester v. Weeks, 45 S. D. 639, 189 N. W. 941; Id., 46 S. D. 93, 190 N. W. 809; Security State Bank of Beresford v. Weeks, 46 S. D. 363, 193 N. W. 60.

Appellant contends that the evidence in the present case shows facts sufficiently different from those in State Bank of Alcester v. Weeks and Security State Bank of Beresford v. Weeks, supra, to justify and require a different holding and that in the present case Security State Bank should be deemed to have been a holder in due course. This contention is based upon the fact that section 19 of the Negotiable Instruments Law (Laws 1902, c. 130) as existing in the state of Iowa at the time of the transfer of the note in this case read:

"The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

In South Dakota this section reads:

"The signature of any party may be made by an agent duly authorized *in writing*.

■ Appellant contends that, as the agent Spellings was appointed in Iowa, and orally authorized to indorse notes, the indorsement by him in South Dakota of the note in this case in the name of Midland Packing Company constituted Security State Bank of Beresford a holder in due course. Respondent contends that, the contract of indorsement being executed in South Dakota, its validity must be determined by the law of this state. We think respondent is correct in this contention. The rules applicable to the construction of contracts where the place of execution and place of performance are in different states are discussed at some length in Hogue-Kellogg Co. v. G. L. Webster Canning Co. (C. C. A.) 22 Fed. (2d) 384, where the court says:

"The rule with respect thereto is well stated by Prof. Minor in his work on Conflict of Laws, § 172, pp. 410, 411, as follows:

" 'By the formal validity of a contract is meant the necessary compliance with the forms and ceremonies prescribed by law upon entering into certain contracts. It is evident that if the forms and ceremonies thus prescribed by the law of a state are essential to the validity of the contract, if entered into in that state, there can never have been any contract if those forms are wanting. Such matters relate to the making of the contract, and are therefore to be governed by the law of the situs of the making (the lex celebrationis). On the other hand, if the contract is entered into with all the forms required by the lex celebrationis, it is equally obvious that the omission of some of the forms demanded by the law of the place of performance of the contract is immaterial. The law of the latter place manifestly only applies to contracts made there; to hold otherwise would be to suppose its legislature intent upon usurping the authority of other states over acts done within their limits. It is therefore well settled that the formal validity of a contract is to be governed by the lex loci celebrationis.'

"This clear statement of the law we understand to be in complete harmony with the rule established by the Supreme Court of the United States. In the case of Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245, that court had before it a case involving a bill of exchange drawn by a person in Chicago upon a firm in St. Louis and verbally accepted by a member of the firm when present in Chicago. Here was a contract, then, made in Illinois and to be performed in Missouri. By the law of Illinois the parol acceptance was valid; by the law of Missouri it was not. The court held that the validity of the verbal acceptance was to be determined by the law of Illinois, the place where the contract was made, and stated the rule applicable in such cases as follows:

" 'Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.'

"And, referring to Wheaton on Conflict of Laws, the court deals with the point involved here in the following statement:

" 'The same author, however, lays down the rule that the place of making the contract governs as to the formalities necessary to the validity of the contract. Page 317. Thus, whether a contract shall be in writing, or may be made by parol, is a formality to be determined by the law of the place where it is made. If valid there, the contract is binding, although the law of the place of performance may require the contract to be in writing.' The case of Scudder v. Union National Bank has never been overruled, but, on the contrary, has been repeatedly cited as binding authority, the latest citation by the Supreme Court of the United States being in Gaston, etc., Ltd., v. Warner, 260 U. S. 201, 43 S. Ct. 18, 67 L. Ed. 210. The following cases are also of interest as sustaining the rule stated: Liverpool, etc., Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 458, 9 S. Ct. 469, 32 L. Ed. 788; Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Tilden v. Blair, supra, 21 Wall. 241, 22 L. Ed. 632; Wastun v. Lincoln Nat. Life Ins. Co. (C. C. A. 8th) 12 F. (2d) 422; Netherwood v. Raymer (D. C.) 253 F. 515; Hubbard v. Exchange Bank (C. C. A. 2d) 72 F. 234; Exchange Bank v. Hubbard (C. C. A. 2d) 62 F. 112; Phinney v. Mutual Life Ins. Co. (C. C.) 67 F. 493; Park Bros. & Co. v. Kelly Axe Mfg. Co. (C. C. A. 6th) 49 F. 618; Williston on Contracts, §. 722."

The contract of indorsement was made in this state, and the formalities necessary to its execution must be determined by the laws of this state. It purported to be made by an agent of the payee. The law of this state says that such indorsement can only be made by an agent duly authorized in writing, and, since Spellings was not authorized in writing at all, it follows that his attempted indorsement was no indorsement at all. In Alcester State Bank v. Weeks, 46 S. D. 93, 190 N. W. 806, the case was before the court on a petition for rehearing. In addition to the counsel on each side, three of the leading law firms in the state asked leave to file briefs as amici curiæ. The chief point on which rehearing was asked was stated in respondent's brief as follows:

"We contend that, since the Midland Packing Company had received the proceeds paid by the bank for the note, and since the Midland Packing Company was not questioning Colby's authority to indorse that the question could not be raised by the defendant in this action, and that these facts rendered the indorsement sufficient to make the bank a holder of the note in due course."

The agent Colby in that case had the same authority and form of authority as the agent Spellings in the present case. This court said that the contention of petitioners in effect was that agency to indorse might be shown by acts of ratification by the principal, and decided that under the terms of our statute this could not be done.

Oral authority given previous to the indorsement is certainly no more authority in writing than ratification after the indorsement is authority in writing. We therefore conclude that proof that the Negotiable Instruments Law of Iowa sanctions indorsement of negotiable paper by an agent whose appointment and authority are oral does not differentiate the case in any degree, or require or authorize the application of any different rule than was announced in State Bank of Alcester v. Weeks, 46 S. D. 93, 190 N. W. 806, and that it follows that appellant was not a holder in due course of the note sued upon.

Appellant's next contention is that Exhibit C estops respondent from setting up any defense as against any holder for value, whether a holder in due course or not. In Bank of Centerville v. Larson, 47 S. D. 374, 199 N. W. 46, it is said that a similar paper, except that it was addressed specifically to the Bank of Centerville, "must be construed as sufficient to cut off all defenses." But does the language of Exhibit C warrant such a construction? This paper and its companion, Exhibit D, which accompanied the other note, are referred to repeatedly in the testimony of the officers of Security State Bank as "waivers," and repeatedly in their testimony they state that they relied upon these "waivers" in purchasing the notes. But Exhibit C does not purport to be a "waiver" of anything. It is a declaration or statement that there are no offsets or conditions against the note. If we concede that it was executed knowingly by respondent and intended by him to be relied upon by any one who might purchase the note, respondent can only be estopped from disputing the representations he has made. He cannot be estopped from setting up other defenses that are not covered by the language of the representations made in the exhibit. The representation made in Exhibit C, "There are no offsets or conditions against this note," is simply a declaration that Christensen has no offset against the note, and that the note is not dependent upon any condition. In other words, it is a representation that the maker has no offset against the note, and that there

are no conditions to defeat it, such as a conditional delivery. The language falls far short of saying that the maker renounces all defenses to the note, and the defense of fraud in procuring it which is set up in the answer and admitted by plaintiff to exist is not anything in the way of offset or condition of any kind against the note. The defense admits the unconditional execution and delivery of the note, and makes no claim of any offset. That the note was obtained by false and fraudulent representations is a defense entirely distinct and different from anything in the nature of either offset or conditions against the note.

The blank line following the word "address" indicates that Exhibit C was on a printed form. If meant by Midland Packing Company (who apparently had it prepared) as a "waiver" of all defenses, it was evidently both designed and fitted to deceive the person signing it. Had it been desired to get from the signer a deliberate and intentional "waiver" of all defenses to the note, the word "defenses" would have occupied the place of the word "conditions" in this paper, for "defenses," in this connection, is a far more commonly used and generally understood word than "conditions."

The president of Security State Bank says that the deal with Spellings was made by him, and that in making the purchase he relied upon the "waivers," Exhibits C and D; that the notes accompanied by the exhibits were brought into the bank on the same day they were executed, October 22, 1919, and that the notes were indorsed by Spellings there in the bank, and the notes and Exhibits C and D were delivered to him all in one transaction. These so-called waivers, Exhibits C. and D, executed at the same time as the notes, and delivered along with the notes when they were discounted on that same day to Security State Bank, were calculated to arouse, rather than to allay, suspicion. They protest too much. As was said by the Court of Appeals of Kentucky in Hill v. Thixton, 94 Ky. 96, 23 S. W. 947, the purchase of a note without such a certificate "would have been more in accordance with the usual course of trade than when the holder shows evidence of the necessity of fortifying his property by a suspicious overshow of virtue. * * * It was, indeed, calculated to arouse and excite suspicion. An ordinary and unsuspicious-looking promissory note was in bad company when it had to be backed up such an unusual paper." Com-

44

mercial paper negotiated under usual circumstances is not accompanied by such a certificate of character.

 The construction that must be placed on these Exhibits is a question for the court. If Exhibit C is a waiver of all possible defenses, a verdict for appellant should have been directed. If it is not, the defense that the notes were procured by fraud (which is admitted) is available, and the verdict for defendant, directed by the court, is proper, and should be sustained.

The opinion by Judge Dillon in Bank of Centerville v. Larson does not undertake any analysis of the language of the so-called waiver. It simply assumes that the phrase, "there are no offsets or conditions against the note," must be construed "as sufficient to cut off all defenses and make the instrument impregnable" in the hands of the purchaser, but this assumption is not justified by the language of Exhibit C. The statement, "There are no offsets or conditions against this note," did not justify the assumption that the maker had thereby waived all defenses to the note, including defenses the existence of which he did not then know, such as the defense admitted to exist, namely, that he was being deliberately and designedly swindled by the Midland Packing Company which procured the note from him by representations the falsity of which he could not possibly have discovered until later on. If plaintiff were a due course holder of the note, then, no matter how grossly defendant had been deceived and imposed upon, defendant and not plaintiff, would have to stand the loss resulting from the imposition, but, since plaintiff is not a holder in due course, it is in no better position than Midland Packing Company itself would have been had it attempted to enforce payment, except in so far as defendant may be estopped by the statement that there are no offsets or conditions to the note.

In 21 C. J. 1143, it is said that, where a person liable on a note states to a prospective purchaser or assignee that the obligation is valid, and that there is no defense to it, he is estopped to resist payment in an action by such person who has taken the paper on reliance on his representation, but it is further said that, "to render this rule operative, the representations must be outside of the face of the obligation, and, even though they are thus disconnected, if they are made simultaneously with the execution of the obligation, so that there is in effect but a single transaction, no

estoppel will arise." In Dow v. Higgins, 72 Ill. App. 302, cited. in support of the text, the certificate given with the notes read as follows:

"Chicago, December, 1925.

"I, Emily C. Dow, do hereby certify that the two promissory notes, bearing even date herewith, for two hundred and fifty dollars each, and payable to my order. in thirty and sixty days after date, are given by me for a good and valuable consideration, and that I have no defense to either of them. Emily C. Dow."

The court held that, the certificate having been executed and delivered contemporaneously with the execution of the notes and received by defendant at the time of the purchasee, there was no estoppel to set up the defense of fraud in procuring the notes. See, also, Leroy v. Meadows, 83 Okl. 45, 200 P. 858. In Whedon v. Hogan, 8 Misc. Rep. 323, 28 N. Y. S. 554, where one about to purchase a note, in reply to an inquiry, received from the maker a letter reading as follows:

"Mr. Whedon—Dear Sir: The signature is all right on the note for one hundred dollars, W. H. Ruffhead.

"James Hogan."

—it was held that this did not estop the maker from interposing the defense of usury; the court saying in effect that the letter was simply a certificate to the genuineness of the signature.

In Orient State Bank v. Zemlicka, 49 S. D. 277, 207 N. W. 69, the facts were quite different from those in the present case. The writing given by defendant in that case was not general, nor was it contemporaneous with the execution of the note, nor presented to the purchaser along with the note when the note was offered for discount in the first instance. In that case, when the note was offered by Julian for discount, Gunnison said that before buying it he would like to see the maker and ask him if it would be all right for him to buy the note. Julian asked if it would be sufficient if he should get a writing to that effect from the maker, and, being told that it would, he went to the maker, who signed the writing, which Julian some days later took to Gunnison with the note for discount.

Zemlicka, the maker of the note, was apprized of the fact that Gunnison was making purchase of the note dependent on assur-

ance from him that it would be all right to buy it. He knowingly sent Gunnison a writing meant to give him such assurance, which Gunnison acted upon, and it was properly held that, under such circumstances, the bank, acting through Gunnison, its cashier, in panying full value for the note, became a holder in due course, against whom defenses were not available that might have been maintained against the payee. We do not regard the decision in the Zemlicka Case as being in conflict with our conclusion in the present case.

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.