SECURITY HOLDING CO., Appellant, v. JOHNSON, et al, Respondents.

(231 N. W. 536.)

(File No. 6992. Opinion filed June 24, 1930.)

*Caldwell & Burns,* of Sioux Falls, for Appellant.
*Bogue & Bogue,* of Parker, for Respondents.

BROWN, P. J. This action arises out of the artful operations of the now moribund or defunct Midland Packing Company of Sioux City, Iowa. In August, 1918, the cashier of Security State Bank introduced William Colby, an agent for the sale of the stock of Midland Packing Company, to defendants, who were farm-

ers in the vicinity of Beresford, with the result that defendants each subscribed for fifty shares of stock in the company of the par value of $100 a share, for which defendants paid in cash $15,000. On August, 6, 1919, Colby and another agent named Barker were in the vicinity trying to push further sale of the stock. They made their headquarters at the Security State Bank and there prepared two notes, one for $12,500 on the blank form of note in use by the bank, due October 6, 1920, to the order of the bank as payee, the other for $18,750 on the blank form of note in use by the Midland Packing Company, due October 6, 1921, to the order of Midland Packing Company as payee. At the same time they prepared a typewritten instrument Exhibit B reading as follows:

"Beresford, South Dakota, October 6th, 1919.

"Security State Bank, Beresford, South Dakota.

"Gentlemen: We understand that Messrs. Barker & Colby wishes to place our note for twelve thousand five hundred dollars with your bank, which is satisfactory to us."

They submitted this as well as the $12,500 note to C. H. Olsen, president of the bank, who added to Exhibit B the words "given for Midland Packing Co. Sioux City Iowa, Preferred Stock," and arranged with Barker and Colby that if they secured the signatures of defendants to the notes and to Exhibit B the bank would purchase the $12,500 note. Barker and Colby drove out to the farm of defendants and by means of grossly fraudulent misrepresentations, which were relied on by defendants, they procured the signatures of defendants to the two notes and to Exhibit B, as the price of 250 shares of Preferred Stock at $125 a share, and made an agreement in writing with defendants that they would resell the stock within a year at an advance of $25 a share and divide the profits, one-half to defendants and one-half to themselves. They also gave to defendants a receipt acknowledging receipt of "the sum of Thirty-one Thousand Two Hundred Fifty Dollars (Cash $12,500. Note $18,750.) payable to the Midland Packing Company as payment for two hundred fifty shares of the capital stock of Midland Packing Company." Thereupon they returned to the bank, delivered Exhibit B and the note for $12,500 to the bank, and received therefor the bank's draft for $5,000 and its C. D. (which was afterwards paid) for $7,500. They gave to the bank their check for $112.50

discount on the transaction, which check was paid. Defendants received no stock and no consideration whatever for the two notes aggregating $31,250. None of the officers of the bank went to the farm of defendants when the notes and Exhibit B were procured, and when they completed the transaction with Barker and Colby at the bank and delivered the draft and C. D. in exchange for the $12,500 note and Exhibit B, none of the bank officers knew of the false and fraudulent representations whereby Barker and Colby had procured the signatures of defendants to the notes and the exhibit. The Midland Packing Company had procured from the Securities Commission of the state of South Dakota a permit to sell its preferred stock in the state of South Dakota to the amount of $100,-000, and no more, and, prior to the time that its agents Colby and Barker procured the signatures of defendants to the notes and exhibit herein referred to, it had sold more than $100,000 of its preferred stock in the state of South Dakota, and on January 19, 1920, the permit which had been given it by the securities commission of South Dakota was canceled and revoked. In 1925, the Security State Bank became insolvent and was taken over by the banking department and thereafter the plaintiff corporation, Security Holding Company, was formed and the $12,500 note was transferred to it, and the note not being paid this action was commenced.

The case was tried to the court without a jury which made findings of fact in accordance with the foregoing statement, but more in detail, and concluded as a matter of law that defendants were not liable on the note, and pursuant to such findings and conclusion judgment was entered dismissing the complaint on the merits, from which judgment plaintiff appeals. Appellant concedes that the notes and Exhibit B were procured by fraudulent representations relied on by respondents, and the only contention on the appeal is that the findings of fact do not support the conclusions of law and judgment.

■■ The Security State Bank, being the payee in the note, was not a holder in due course. Britton Milling Co. v. Williams, 45 S. D. 274, 187 N. W. 159, 21 A. L. R. 1352; Tripp State Bank v. Jerke, 45 S. D. 448, 188 N. W. 314; First National Bank v. Larson, 53 S. D. 262, 220 N. W. 506; Wakonda State Bank v. Fairfield, 53 S. D. 268, 220 N. W. 515. Appellant, having acquired

the note long after maturity, is not a holder in due course. Appellant concedes that it is not a holder in due course, and that the bank was not, but contends that respondents are estopped from maintaining any defense to the note by reason of the execution of Exhibit B.

The findings of fact show that before the sale of any of the stock on this occasion the contemplated effort to sell stock to the defendants must have been the subject of discussion between Colby and the president of the bank. The findings further disclose that the officers of the bank had at different times in the past aided Colby and other agents of the Midland Packing Company in procuring "prospects" and introducing such agents to them. The officers of the bank furnished Colby with the blank form of note on which the note in suit is made out, and that note was filled in for the sum of $12,500, apparently in the bank, and the paper Exhibit B was written up with a typewriter, also apparently in the bank, and the exhibit after being thus prepared was presented by Colby to the president of the bank for his inspection and approval. Out of excess caution, the president of the bank added the typewritten words "given for Midland Packing Co., Sioux City, Iowa, Preferred Stock," to Exhibit B, handed it back to Colby, and told him that if he secured the signatures of defendants to the note and the exhibit the bank would discount the note. In view of the very unusual precaution taken by the bank officers to head off the possibility of defense to a note before they even knew that any such note could be procured, it is difficult to believe that they had neither knowledge nor suspicion of the methods by which sales of this company's stock had been made in the past and were going to be made in the future. But even if they had no such knowledge or suspicion, the unchallenged findings of fact disclose that, after having participated in the preparation of Exhibit B and having added to it language that the president of the bank deemed necessary and suitable for the bank's purposes, he delivered it to Colby and arranged to purchase the note if Colby would procure the signatures of defendants to the exhibit as well as to the notes. Before the sale had even been suggested to defendants, he knew that defendants were the parties designed by Colby for the expected sale, and he made Colby the agent of the bank to procure the signatures of the defendants to Exhibit B. Appellant now seeks to hold de-

fendants liable on the notes solely on the strength of their having signed Exhibit B and the bank having parted with money in reliance on Exhibit B, constituting an estoppel against defendants maintaining any defense whatever to the notes. But appellant cannot rely upon Exhibit B and repudiate the means by which it was procured. In Union Trust Company v. Phillips, 7 S. D. 225, 63 N. W. 903, we say:

"The general rule unquestionably is that one, whether an individual or a corporation, who seeks to enforce and derive a benefit from a contract undertaken to be made in his or its behalf by another, must adopt not only the entire contract, but the means by which the contract was procured. This was very directly declared by this court in Wyckoff v. Johnson, 2 S. D. 91, 48 N. W. 837."

The trial court in the instant case finds specifically that the subscription contract for stock, the $12,500 note, and exhibit B, were all procured from the defendants by the same fraudulent representations at the same time and under the same circumstances. The fraudulent representations are partly detailed in the findings. The court finds that they were believed by the defendants, relied on by the defendants, and that neither note nor Exhibit B would have been executed by the defendants but for such fraudulent representations. In Security Holding Company v. Christensen, 53 S. D. 37, 219 N. W. 949, 952, 60 A. L. R. 1173, we quote from 21 C. J. 1143, to the effect that where the maker of a note states to a prospective purchaser that there is no defense to it, he is estopped to resist payment in an action by one who has taken the paper in reliance upon such representation, but "to render this rule operative, the representations must be outside of the face of the obligation, and, even though they are thus disconnected, if they are made simultaneously with the execution of the obligation, so that there is in effect but a single transaction, no estoppel will arise." In the present case not only was Exhibit B made simultaneously with the execution of the note and delivered to the bank simultaneously with the note, but it was procured by the same fraudulent representations that induced the making of the note and it was so procured by one, who, in procuring it, was acting as the agent of Security State Bank. Under these circumstances defendants are not estopped to set up the defense of fraud in procuring either the note or the exhibit, and not

only was this note procured by fraudulent representations, but no consideration whatever was ever given for it, no stock was ever issued to defendants therefor.

The judgment is affirmed.

POLLEY, SHERWOOD, and BURCH, JJ., concur.

CAMPBELL, J., concurs in the result.