### EQUIPMENT ACCEPTANCE CORPORATION v. ARWOOD CAN MFG. CO., Inc., et al.
### No. 8443.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1941.

R. R. Kramer, of Knoxville, Tenn. (Russell R. Kramer, Taylor H. Cox, and Poore, Kramer & Cox, all of Knoxville, Tenn., on the brief), for appellant.

Joel H. Anderson and A. C. Grimm, both of Knoxville, Tenn. (Grimm & Tapp and Joel H. Anderson, all of Knoxville, Tenn., on the brief), for appellees.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This controversy between citizens of different states comes to us on appeal from the dismissal of an action brought by a finance company as assignee of a promissory note and conditional sales contract signed by Arwood Can Manufacturing Company, purchaser of certain machinery from the Max Ams Company, manufacturer. As endorsers of the note in suit, D. G. Arwood and Luke H. Arwood, officers of appellee company, were joined as co-defendants.

An amended decree in the District Court included a finding that the payee of the note, the Max Ams Company, procured the negotiable paper from the appellee can manufacturing company by fraudulent misrepresentation of a material fact to the effect that the machinery sold had been set up and operated successfully prior to its shipment to appellee company.

The District Judge held that this fraud of the payee rendered its title to the promissory note defective, and shifted the burden of proof to appellant to establish itself as a due-course holder of the note. The court decreed that the appellant had failed to carry this burden.

We find that the record contains substantial evidence to support the trial court's finding of fact. In our judgment, the conclusion of law of the District Judge was also correct.

On January 31, 1935, the Max Ams Machine Company submitted to the appellee company a proposal to furnish and install in the latter's plant in Knoxville, Tennessee, machinery and equipment for the manufacture of cans. Much correspondence concerning prices and other details of the proposed contract ensued, wherein it was emphasized by the appellee company that "used machines will be completely torn down; all worn and broken parts replaced with new ones, and when delivered be the same as new, and guaranteed to perform and last as long as new machines," and that "the ear machine is to be in complete coordination with the rest of the line and is to be fully automatic."

By letter, the Machine Company acceded promptly to the requirement as to used machines and in the purchase order of March 6, 1935, it was expressly stipulated that the ear machine must be "fully auto-

matic, and coordinated with the other machines in performance." At the time its order for the machinery was mailed, the can company forwarded its check to the machine company for $5,000, as initial payment.

Further correspondence followed anent additional equipment, time of shipment, and other details, from which, together with the preceding correspondence, it appears that the machine company represented itself as skilled in building the type of machinery sold, and as equipped to fill the order placed. The advancement of the substantial cash payment and the solicitation by the appellee of orders for its product demonstrate its reliance upon these representations of the machine company.

On July 3, 1935, the machine company wrote appellee that the complete line (excepting the Ear Sweating Machine), with connecting conveyors, twisters and chutes, was set up and that "we expect to have it operating automatically before the `end of the week, after which it will be changed over to the 5 pound size for which you desire the machinery shipped," and that "you will understand that while we have overcome practically all of the difficulty experienced in the development of the Ear Sweating Machine, that there are still several refinements to be worked out which have prevented us placing this unit in the line up to the present moment, but we hope to have this finished within the next couple of days." Then was added the assurance that "from present indications, we have every reason to believe that shipment of this line will go forward by July 10th."

On July 11th, the machinery manufacturer mailed a follow up letter, stating, "we completed testing the second size late yesterday, and consequently it was impossible for us to dismantle and crate any of the equipment until today"; but that the machinery would be shipped July 13th.

In the context, these letters, in our judgment, constitute representations that the can manufacuring machinery sold to appellee had been operated successfully in the plant of the Ams Machine Company at Bridgeport, Connecticut.

Appellee-defendants, D. G. Arwood and L. H. Arwood, testified that Ortalli, salesengineer, who came to Knoxville with George W. Meder, Treasurer, as representative of the machine company, admitted in the presence of and uncontradicted by the latter that the machinery had not been tested before being shipped. The unsuccessful effort of the seller of the machinery, through its expert engineers and workmen sent to the plant of the appellee to set up the machinery so that it would function, carries weight as circumstantial evidence of the fact that the machinery had not been operated previously. There is abundant evidence in the record that the machinery could not be made to work as the seller had represented it would, and that it was virtually useless to the appellee company.

Before the machinery had been uncrated at its destination, the appellee, on July 19, 1935, executed and mailed to the Ams Company the controverted promissory note and attached conditional sales contract which, for a valuable consideration, the payee, by endorsement without recourse, assigned to appellant.

The note was negotiable, Code of Tennessee of 1932, Section 7325; White v. Hatcher, 135 Tenn. 609, 188 S.W. 61; and a mere failure of consideration between the maker and the payee would have constituted no defense in Tennessee to an action on the note brought by the appellant as holder in due course. Reconstruction Finance Corporation v. Patterson, 171 Tenn. 667, 106 S.W.2d 218, 107 S.W.2d 513, construing Sections 7352, 7379, 7380, 7383, of the Code of Tennessee, 1932.

But appellant concedes in its brief that "if the record shows that the execution of the note was obtained by fraud, the title of the payee thereto would be defective and that under these circumstances the burden would be upon the plaintiff to show it is a holder in due course." The compulsion of this concession presses from the express language of the Tennessee Negotiable Instrument Laws.

Code of Tennessee, 1932, Section 7379, defines defective title, as follows: "The title of a person who negotiates an instrument is defective within the meaning of this law when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Section 7383 of the Tennessee Code provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder

to prove that he or some person under whom he claims acquired the title as holder in due course."

See Taylor v. Goodrich Tire & Rubber Co., 20 Tenn.App. 352, 98 S.W.2d 1094, in which the Court of Appeals of Tennessee held that where there is substantial evidence that the title of the original holder of a note was defective, a subsequent holder bears the burden of showing that he received the note in good faith, for value, and without notice of infirmity in the instrument or defect in the title of the person negotiating it.

In the circumstances of this case, did the appellant carry the burden required by the statute of proving that it acquired title to the note as a holder in due course? The trial judge answered this question in the negative, saying: "Representatives of the complainant in the best position to know gave no testimony and no testimony appears in the record to the effect that all those who may have been concerned in acquiring the note were without knowledge of the endorser's defective title."

Appellant introduced only one witness, its credit manager, though several other officers and employees participated in transactions relating to the purchase of the negotiable note. The single witness for the appellant displayed only meager knowledge of the subject matter. Indeed, he did not even know whether the promissory note and the conditional sales contract were fastened together when the papers came to his desk for approval. Reasonable inference arises that appellant could have produced more definite information concerning its acquisition of the note, had the desire to do so existed.

This being true, "the presumption always is that competent and pertinent evidence within the knowledge or control of a party which he withholds is against his interest and insistence." Standard Oil Company v. State, 117 Tenn. 618, 672, 100 S.W. 705, 718, 10 L.R.A.,N.S., 1015. See, also, Kirby v. Tallmadge, 160 U.S. 379, 16 S.Ct. 349, 40 L.Ed. 463; Dunlap v. Haynes, 51 Tenn. 476, 4 Heisk. 476; Taylor v. Goodrich Tire & Rubber Co., supra.

Our conclusion is that the District Court was right in holding that "the burden shifted to the plaintiff to show itself to be a holder without notice, and for value, and that it failed to carry the burden."

But, even so, appellant contends that the waiver contained in the conditional sales contract precludes appellees from relying upon the defenses interposed. The language of the waiver clause is broad: "We admit notice of the intended assignment of this contract and agree that if this contract be assigned you shall not be deemed the agent of assignee for any purpose whatsoever and all payments shall be made to assignee absolutely, hereby waiving all rights now or hereafter existing in our favor against you to make any defense, counterclaim or cross-complaint to any demand or action brought by assignee to recover payments due under this contract or to recover possession of said chattels, we further agreeing that all claims or demands on our part against you shall be independent of any action by assignee against us."

In support of the validity and effectiveness of this waiver, appellant cites Elzey v. Ajax Heating Company, 158 A. 851, 10 N.J.Misc. 281, and Security Holding Company v. Christensen, 53 S.D. 37, 44, 219 N.W. 949, 60 A.L.R. 1173, 1179.

To the contrary, appellee cites San Francisco Securities Corporation v. Phœnix Motor Co., 25 Ariz. 531, 220 P. 229; Pacific Acceptance Corporation v. Whalen, 43 Idaho 15, 248 P. 444; Motor Contract Co. v. Van Der Volgen, 162 Wash. 449, 298 P. 705; Progressive Finance & Realty Co. v. Stempel, 231 Mo.App. 721, 95 S.W.2d 834; Mechanics' Bank v. New York & N. H. R. Co., 13 N.Y. 599, 638, and other cases.

The District Judge emphasized In re Lawrence, 2 Cir., 166 F. 239, 246.

An elucidating statement may be read in Jones on Chattel Mortgages and Conditional Sales, Bowers Ed., vol. 3, section 1257, at page 331, where the author says: "A few cases have reached the courts of last resort wherein in the original contracts of conditional sale attempts were made to forestall any defense by the conditional buyer, in the event the seller should assign the contract, insofar as such defense should be based upon fraud, duress, mistake, or want of consideration, or other like matter. While the aid of a statute is generally invoked in the refusal of the courts to give binding effect to such a provision, the provision itself is regarded by the courts as being contrary to public policy and therefore unenforceable."

446

Who travels fastest travels alone. A promissory note, acquired in good faith, for a valuable consideration, before maturity needs no accompanying waiver to carry its luggage.

A note acquired either in bad faith, or without a showing of good faith, if justly demanded in the circumstances, should not by the execution of a waiver agreement, contemporaneously with the signing of the note, be relieved of essential impedimenta on its courier course.

A contrary holding would permit stipulations concerning negotiability of commercial paper to be inserted in sales contracts in free derogation of the uniform negotiable instrument laws embodied in the codes of the states.

Federal judicial license, if granted to parties to repeal by contractual innovation the established law merchant, contrary to express provisions of applicable state statutes, would be hostile to time-honored public policy and to the appropriate self limitation of judicial power.

The judgment of the District Court is affirmed.