2001 ND 168

**DAKOTA PARTNERS, L.L.P., f/k/a Dakota Partners, Plaintiff and Appellant,**

v.

**GLOPAK, INC., Defendant and Appellee,**

**Michael R. Larson and Robert E. Larson, Defendants.**

**No. 20010092.**

Supreme Court of North Dakota.

Oct. 16, 2001.

Lowell P. Bottrell of Anderson & Bottrell, Fargo, ND, for plaintiff and appellant.

Wickham Corwin of Conmy, Feste, Hubbard, Corwin & Brust, Ltd., Fargo, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Dakota Partners appealed from a South Central District Court judgment denying its breach of contract claims. Concluding the offsets clause in the addendums to the contract did not stop Glopak from asserting the defense of fraud, we affirm.

I

[¶ 2] Ray Larson and his sons, Michael and Robert Larson ("the Larsons"), contacted Glopak, Inc., in an effort to sell it the intellectual property rights to their "bag and straw" invention. The "bag and straw" allows single-serving beverages in a small pouch to be easily accessed with the enclosed straw. Glopak purchased the intellectual property rights to the "bag and straw" and agreed to make royalty payments to the Larsons.

[¶ 3] The Larsons sought to have the royalty payments accelerated, but Glopak did not consent. Glopak allowed the Larsons to sell their royalty payments to a third party. Dakota Partners then entered into two agreements with Glopak and the Larsons (addendum # 2 and addendum # 3) through which Dakota Partners would receive royalty payments owed to the Larsons in exchange for cash advances to the Larsons. Addendum # 2 provided, in part:

> Glopak was requested by Larson on December 4, 1997, and Glopak has agreed, that payments which become due to Larson under Clauses 7c up to a maximum of Forty Thousand U.S. Dollars ($40,000.00 US) shall be paid to Dakota Partners . . . .

Addendum # 2 also provided, "Glopak agrees that it shall not offset any amount due under Clauses 7c and that said amount is absolutely due and owing." Dakota Partners insisted on including this language.

[¶ 4] Addendum # 3 is identical in form, but addressed the royalties due under clause 7b. Addendum # 3 provided, in part:

> Glopak was requested by Larson on January 29, 1998, and Glopak has agreed that payments which become due to Larson under clauses 7b up to a maximum of Fifteen Thousand U.S. Dollars ($15,000.00 US) shall be paid to Dakota Partners . . . .

Addendum # 3 included the same "offset" language as addendum # 2.

[¶ 5] Subsequently, Glopak discovered the Larsons were not the rightful owners of the intellectual property rights to the "bag and straw." Glopak rescinded its agreements with the Larsons and refused to make payments to Dakota Partners. Dakota Partners filed suit against Glopak and the Larsons for breach of contract. The Larsons did not participate in the court proceedings.

[¶ 6] The trial court found Glopak's consent to the original royalty agreement and subsequent addendums was obtained through the fraudulent representations of the Larsons. The trial court specifically held "the claims asserted by Dakota Partners against Glopak [we]re based on contracts that have been properly rescinded" and were invalid. While both parties agree the Larsons' actions were fraudulent, the dispute arises from what effect the fraud had on addendums # 2 and # 3.

[¶ 7] The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court

has jurisdiction under N.D. Const. Art VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 8] "The construction of a written contract to determine its legal effect is a question of law for the court to decide." *Egeland v. Continental Resources, Inc.*, 2000 ND 169, ¶ 10, 616 N.W.2d 861. We independently examine the contract to determine whether the trial court erred in its interpretation of the contract. *Id.*

[¶ 9] The resolution of the dispute depends on the effect of the clause: "Glopak agrees that it shall not offset any amount due under Clauses 7c and that said amount is absolutely due and owing." Glopak argues the "offset" clause is rendered meaningless because of the underlying fraud but if the clause is to be given meaning, it simply prohibits Glopak from reducing the payments due to Dakota Partners by any counterclaims the Larsons may have. Dakota Partners argues the "offset" clause serves as a waiver of defenses and prohibits Glopak from asserting a fraud defense.

## III

### A

[¶ 10] The effect of fraud on a waiver-of-defense clause is one of first impression in North Dakota. Three jurisdictions have grappled with the effect fraud has on waiver-of-defense clauses. Kentucky and New York appear to follow the same approach, but South Dakota employs a different analysis. In recent years, however, New York has drifted toward the South Dakota approach.

[¶ 11] Dakota Partners relies on an 1892 Kentucky case, *Crabtree v. Atchison,* for the proposition that a "certificate" accompanying an assignment verifying a debt is a separate instrument not de-stroyed by fraud. 93 Ky. 338, 20 S.W. 260, 260–61 (1892). Dakota Partners likens the "offset" clause in the addendums to the certificate in the *Crabtree* case, and contends Glopak's waiver-of-defense clause was not destroyed by the Larsons' fraud.

[¶ 12] The continuing validity of *Crabtree* is questionable. In 1893, the year after *Crabtree* was decided, the same appellate court in Kentucky held fraud destroys both the underlying instrument and any waiver-of-defense clauses executed concurrently with the instrument. *Hill v. Thixton,* 94 Ky. 96, 23 S.W. 947, 949 (1893). The *Hill* court appears to have viewed the *Crabtree* court's discussion of the effect of fraud on waiver-of-defense clauses as dicta because the *Crabtree* case was ultimately reversed on other grounds. *Id.*

[¶ 13] New York followed Kentucky in holding when a waiver-of-defense clause is part of an agreement obtained through fraud, the fraud vitiates not only the original agreement, but the waiver-of-defense clause as well. *Manhattan Co. v. Monogram Assoc., Inc.,* 276 A.D. 766, 92 N.Y.S.2d 579, 580–81 (1949). This Court has echoed this general view of the sweeping effect of fraud, but has not analyzed it in the context of waiver-of-defense clauses. *Verry v. Murphy,* 163 N.W.2d 721, 731 (N.D.1968) ("fraud vitiates and destroys everything into which it enters").

[¶ 14] Recent New York cases have turned toward analyzing the nature of the waiver-of-defense clause. *General Motors Acceptance Corp. v. Morgese,* 161 A.D.2d 1019, 557 N.Y.S.2d 590, 591 (1990) (in the "absence of any defense alleging fraud," a waiver-of-defense clause is effective to estop a defense of failure of consideration); *PGA Marketing, Ltd. v. Windsor Plumbing Supply, Inc.,* 124 A.D.2d 576, 507 N.Y.S.2d 721, 722 (1986) (a waiver "of the right to assert any defense, offset or coun-

terclaim" would not preclude a defense of fraud).

[¶ 15] South Dakota's case law developed through a trio of decisions arriving at the same result as the Kentucky and New York cases but reaching it through a more precise theory. South Dakota looks to the language of the waiver to decide whether the defense of fraud has been waived. First, in *Bank of Centerville v. Larson*, the South Dakota Supreme Court held the clause "there are no offsets or conditions against this note" was sufficient to prevent a defendant from alleging the note was obtained by fraud. 47 S.D. 374, 199 N.W. 46, 47 (1924). Yet, four years later, when faced with exactly the same waiver-of-defense clause, the South Dakota Supreme Court reached the opposite result and held the clause did not preclude the defendant from asserting a fraud defense. *Security Holding Co. v. Christensen*, 53 S.D. 37, 219 N.W. 949, 951–52 (1928). The contract claim resulted from a scheme similar to that in the current case.

[¶ 16] In *Security Holding Co. v. Christensen*, neither party denied the instrument in question was obtained through fraud. *Id.* at 949–50. The Midland Packing Co. induced Christensen to enter into purchase agreements for shares of Midland's stock. *Id.* Midland Packing Co., in turn, sold the agreements to a financial institution, Security Holding Co. *Id.* at 949. Neither Christensen nor Security Holding Co. was aware of the fraud until the latter attempted to collect on the purchase agreements. *Id.* at 949–50. The instrument in question included this clause: "There are no offsets or conditions against this note." *Id.* at 949.

[¶ 17] The South Dakota Supreme Court held the defense of fraud in the procurement of the instrument was "a defense entirely distinct and different from anything in the nature of either offset or

conditions against the note." *Id.* at 951. The South Dakota Supreme Court explained its contradictory holdings:

> The opinion ... in *Bank of Centerville v. Larson* does not undertake any analysis of the language of the so-called waiver. It simply assumes that the phrase, "there are no offsets or conditions against the note," must be construed "as sufficient to cut off all defenses and make the instrument impregnable" in the hands of the purchaser, but this assumption is not justified by the language of [the clause]. The statement, "There are no offsets or conditions against this note," did not justify the assumption that the maker had thereby waived all defenses to the note....

*Id.* at 952. Further, the South Dakota Supreme Court held the specific defense of fraudulent procurement was not included in the "offset or conditions" waiver. *Id.*

[¶ 18] The South Dakota Supreme Court affirmed its decision in *Security Holding v. Christensen* two years later when deciding *Security Holding v. Johnson*, 57 S.D. 163, 231 N.W. 536 (1930). The South Dakota Supreme Court held that when a note is procured by fraud, the defendant is not automatically estopped from asserting the defense of fraud, even if the note contained a waiver-of-defense clause. *Id.* at 538.

## B

[¶ 19] Following South Dakota, we conclude an analysis of the language of the waiver is necessary. Our goal when reviewing contracts is to give effect to the mutual intention of the parties. N.D.C.C. § 9–07–03; *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574, 577 (N.D.1993). To the extent possible, we give effect to every provision of the contract. N.D.C.C. § 9–07–06; *Continental Cas. Co.* at 579. Unambiguous language will be given its clear

meaning. N.D.C.C. § 9–07–02; *State Farm Mut. Auto. Ins. Co. v. LaRoque,* 486 N.W.2d 235, 237 (N.D.1992). When a contract term is undefined, we usually look to its clear, ordinary meaning. N.D.C.C. § 9–07–09; *Martin v. Allianz Life Ins. Co.,* 1998 ND 8, ¶ 12, 573 N.W.2d 823.

[¶ 20] The addendums provided, "Glopak agrees that it shall not offset any amount due under Clauses 7c and that said amount is absolutely due and owing." The disputed word is "offset."

[¶ 21] "Offset" is defined as "something (such as an amount or claim) that balances or compensates for something else." *Black's Law Dictionary* 1115 (7th ed.1999). "Offset" is synonymous with "setoff." *Id.; A Dictionary of Modern Legal Usage* 616 (2d ed.1995); 67 C.J.S. *Offset* (1978). "Setoff" is defined as "a defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim" or "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." *Black's* at 1376; *see also Modern Legal Usage* at 797. The doctrine of setoff is "an equitable doctrine requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered." 20 Am.Jur.2d *Counterclaim, Recoupment, Etc.* § 6 (1995). *See also* 80 C.J.S. *Set-off & Counterclaim,* § 3 (2000) (setoff "allows parties that owe mutual debts to each other to assert amounts owed, subtract one from the other, and pay only the balance"). In a bankruptcy proceeding, setoff allows "entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *In re Alvstad,* 223 B.R. 733, 740 (Bankr.N.D. 1998) (internal citations omitted).

[¶ 22] Offset does not encompass every available defense; rather, it involves mutuality of debt. A waiver-of-defense clause stating there shall be no "offset" is not as broad as a waiver of all "defenses." *See Security Holding Co. v. Christensen,* 53 S.D. 37, 219 N.W. 949, 951 (1928) (defense of false or fraudulent representations is not contemplated in a waiver of offset). The "offset" clauses in the addendums prohibit Glopak from subtracting any debt owed by the Larsons or Dakota Partners to Glopak from the royalty payments now payable to Dakota Partners, under the addendums. The "offset" clause is not a waiver of the defense of fraud in the procurement of the original royalty agreement. Accordingly, Glopak is not estopped from asserting a fraud defense. The district court did not err.

IV

[¶ 23] The district court's judgment dismissing all claims asserted by Dakota Partners against Glopak is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.