IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2005 Session

## SHELBY ELECTRIC COMPANY, INC.
v.
## PAUL FORBES AND JOSEPH STRAIN

An Appeal from the Circuit Court for Shelby County
No. CT-005619-03     Karen R. Williams, Judge

_____

No. W2005-00263-COA-R3-CV - Filed December 29, 2005

_____

This is an action to enforce a commercial guaranty. The defendants were both 25% shareholders in the plaintiff corporation. They each signed a guaranty on a $70,000 line of credit issued to the corporation. Subsequently, two other shareholders of the corporation drew down $50,000 from the line of credit without notifying the defendant guarantors or the corporation's board of directors. Two days later, the guarantors resigned from the corporation. Within weeks, the two other shareholders who drew the money from the line of credit caused the corporation to default on its obligation. These two shareholders then purchased the corporation's debt from the bank in the name of the plaintiff corporation and demanded payment from the guarantors under their guaranties. The guarantors refused to make the requested payments. The plaintiff corporation then sued the guarantors pursuant to the guaranties. The guarantors filed an answer asserting the affirmative defenses of fraud and fraud in the inducement of the guaranties. The plaintiff corporation filed a motion for summary judgment, citing the broad "waiver of defenses" provision in the guaranties. The trial court granted summary judgment to the plaintiff corporation, concluding that the defenses asserted by the guarantors were waived under the general waiver-of-defenses provision. From that order, the guarantors now appeal. We reverse, concluding that the defenses of fraud and fraud in the inducement were not waived in the general waiver-of-defenses provisions in the guaranties at issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Sharon L. Petty, Memphis, Tennessee, for the appellants, Paul Forbes and Joseph D. Strain.

Henry C. Shelton, III, Memphis, Tennessee, for the appellee, Shelby Electric Company, Inc.

**OPINION**

Integrated Electronic Systems, Inc. ("IES"), was in the business of providing the sales and service of electronic equipment to the medical community. Defendants/Appellants Paul Forbes ("Forbes") and Joseph D. Strain ("Strain") (collectively, "defendants"), both engineers, each owned twenty-five percent (25%) of the stock in IES. The other fifty percent (50%) of IES stock was owned by Shelco of Tennessee ("Shelco"), which is the parent company of Plaintiff/Appellee Shelby Electric Company, Inc. ("Shelby Electric"). Al Quarin ("Quarin") is the President of Shelco and was also the Secretary and a member of the board of directors at IES. Bob Hunolt ("Hunolt") is the Vice-President of Shelco and was also the President and Chairman of the Board at IES.

On March 21, 2001, in the ordinary course of business, IES obtained a line of credit with First Tennessee Bank ("the Bank") in the amount of $50,000, which was later increased to $70,000. At the time IES obtained the line of credit, the six members of the board of directors signed guaranties on the IES line of credit. The six guarantors were the defendants, Quarin, Hunolt, and board members Pat Walkup and Ken Stevens. The guaranties signed by the defendants are the subject of the instant lawsuit.

In August 2003, Hunolt learned that the defendants intended to resign from IES. Shortly thereafter, Hunolt borrowed $50,000 from IES's line of credit, purportedly on behalf of IES, without the knowledge of the defendants and without consulting with the board of IES.[1] Approximately two days later, on August 22, 2003,the defendants resigned from IES, as expected. On August 27, 2003, Shelby Electric purchased the IES note from the Bank. Thereafter, IES, under the control of Quarin and Hunolt, defaulted on the note, even though IES allegedly had funds to meet its monthly obligation on the note. By letters dated August 30 and September 2, 2003, Shelby Electric notified the defendants of IES's default and demanded payment from them of the $70,000 debt, plus interest and attorney's fees, under the guaranties. No demand was made to the other guarantors on the note. The defendants did not make the payments demanded by Shelby Electric.

On October 6, 2003, Shelby Electric, as the holder of the note, filed the instant lawsuit against the defendants for payment of the IES debt pursuant to the guaranties. The defendants filed an answer, asserting as an affirmative defense that Quarin and Hunolt made misrepresentations to the defendants in order to induce them to execute the personal guaranties at issue. They alleged that Quarin and Hunolt told them that they could not be shareholders in IES unless they signed the guaranties, and that the Bank required them to sign the guaranties in order for IES to obtain the line of credit. The answer further asserted as an affirmative defense that Quarin and Hunolt engaged in fraud by executing the notes to the Bank as officers of IES, then drawing $50,000 on the IES line of credit without notice to the defendants and converting the $50,000 to their own use and benefit by paying it to Shelco and Shelby Electric in breach of their fiduciary duties to the defendants and IES.

---

[1]Apparently, IES had already borrowed $20,000 on the line of credit, so $50,000 was the remaining amount available to be borrowed.

On March 1, 2004, Shelby Electric filed a motion for summary judgment, supported by the affidavit of Quarin and a statement of undisputed facts. It argued that the defendants were liable under the guaranty, and that they had waived all defenses to the complaint.

On March 5, 2004, the defendants filed a motion to consolidate this case with another lawsuit filed against them on September 23, 2003, in Shelby County Chancery Court, styled *IES v. Forbes and Strain*. The defendants alleged that the two lawsuits involve common questions of law or fact, and that consolidation was required to serve the interest of judicial economy and to avoid unnecessary delay or duplication of effort. Shelby Electric objected to the consolidation of the two lawsuits.

On March 19, 2004, the defendants filed a motion for leave to amend their answer, seeking to plead additional defenses and to file a third-party complaint against Hunolt, Quarin, and the remaining members of the board of directors of IES. On March 26, 2004, the defendants filed a response to Shelby Electric's motion for summary judgment and to Shelby Electric's statement of undisputed facts. They argued that the defenses of fraud and fraud in the inducement were not waived by the language in the guaranties, and that these defenses raised genuine issues of material fact.

On April 7, 2004, the trial court conducted a hearing on Shelby Electric's motion for summary judgment and the defendants' motion to consolidate. The hearing consisted of argument by counsel for each of the parties. On April 26, 2004, the trial court entered an order granting Shelby Electric's motion for summary judgment and denying the defendants' motion to consolidate. The trial court determined that "the Commercial Guaranty waived all defenses the Defendants sought to plead, and . . . the Commercial Guaranty was properly executed and is controlling." The trial court then concluded that "the remaining issues between the parties may be litigated in the pending Chancery suit . . . ." The trial court determined that a judgment should be entered in favor of Shelby Electric against the defendants in the amount of $70,000, plus interest and attorney's fees. In that order, the trial court did not specifically refer to the defendants' motion to amend their answer.

On May 26, 2004, the defendants filed a motion to alter or amend the April 26, 2004 order. They argued that, in reaching the decision to grant summary judgment in favor of Shelby Electric, the trial court failed to properly consider the defense of fraud. On June 11, 2004, the trial court conducted a hearing on the defendants' motion to alter or amend. On June 24, 2004, the trial court entered an order denying the motion. From that order, the defendants now appeal.[2]

On appeal, the defendants argue that the trial court erred in granting summary judgment to Shelby Electric and in finding that the defenses of fraud and fraudulent inducement were waived pursuant to the language in the guaranties. In addition, the defendants argue that the trial court erred in failing to permit them to amend their answer to raise additional affirmative defenses and to file

---

[2]Sharon L. Petty, counsel for defendants on appeal, did not represent the defendants in the trial court proceedings.

a third-party complaint against Quarin and Hunolt, as well as other directors of IES. In response, Shelby Electric argues that the trial court correctly held that the defendants had waived the defenses that they now seek to plead, asserting that "fraud is just another defense." Shelby Electric also claims that the trial court properly denied the defendants' motion to amend their answer, because the grant of summary judgment in favor of Shelby Electric mooted the issue of the amendment of the defendants' answer.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. **Staples v. CBL & Assocs., Inc.**, 15 S.W.3d 83, 89 (Tenn. 2000). We review the trial court's denial of a motion to alter or amend for an abuse of discretion. **Chambliss v. Stohler**, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003).

We first address whether the defendants, under the waiver-of-defenses provision in the guaranties, waived the defenses of fraud or fraud in the inducement. The guaranties, identical for both defendants, read in pertinent part:

> **GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

> Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without

limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) *any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.* If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty. Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

(Emphasis added) ("Guaranty"). Thus, a myriad of defenses are explicitly waived under the language in the Guaranty. Other unnamed defenses are waived in the "catch-all" provision, which applies to "any defenses given to guarantors at law or equity other than actual payment and performance of the Indebtedness." Neither fraud nor fraud in the inducement are specifically mentioned in the waiver-of-defenses provision of the guaranties. Therefore, the question becomes whether fraud and fraud in the inducement are defenses that are waived under the "catch-all" provision referring to "any defenses . . . at law or equity."

On appeal, the defendants acknowledge the well-established law in Tennessee that "a guarantor in a commercial transaction shall be held to the full extent of his engagements and . . . the words of a guaranty are to be taken as strongly against the guarantor as the sense will admit." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804-05 (Tenn. 1975). Both parties agree that the issue of whether the defenses of fraud or fraud in the inducement can be deemed waived under such a "catch-all" waiver of defenses provision is an issue of first impression in Tennessee. The

defendants argue that public policy strongly dictates that fraud and fraudulent inducement are not waivable defenses, particularly when neither fraud nor fraudulent inducement are mentioned in the waiver-of-defenses clause.

In support of their argument, the defendants rely on New York caselaw on the issue.  In *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974 (N.Y. 1985), the officers and board members of a corporation signed guaranties on a debt of the corporation.  The guaranty in that case was quite broad; it stated that its "absolute and unconditional" nature was "irrespective of (i) any lack of validity . . . of the . . . Restated Loan Agreement . . . or any other agreement or instrument relating thereto," or "(vii) any other circumstance which might otherwise constitute a defense to the guarantee."  When the corporation filed for bankruptcy, the lender sued the defendants on their guaranties.  The defendants asserted the defenses of fraud and fraud in the inducement.  The trial court granted a judgment in favor of the lender, holding that, under the language of the guaranty, the defendants waived their right to assert those defenses. *Plapinger*, 485 N.E.2d at 975.  The defendant guarantors appealed.  The Court of Appeals of New York affirmed the trial court's decision against the guarantors, determining that "the language of the disclaimer in the guarantee is sufficiently specific to foreclose as a matter of law the defenses . . . based on fraud . . . ." *Id.*  The *Plapinger* court emphasized that its decision was based on the fact that the provisions in the guaranty were not generalized boilerplate waiver provisions.  Rather, the language resulted from "extended negotiations between sophisticated business people" who had knowingly "denominated their obligation unconditional." *Id.* at 977.

Later cases refined this reasoning and narrowed the application of *Plapinger* to situations in which the language in the guaranty was "sufficiently specific to bar a defense of fraudulent inducement." *Mfrs. Hanover Trust v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993).  In *Yanakas*, decided under New York law, the guaranty at issue stated that it was "absolute and unconditional," and that it constituted a guaranty of payment "regardless of the validity, enforceability of any of said Obligations or purported Obligations . . . ." *Yanakas*, 7 F.3d at 313.  The Second Circuit recognized the rule that "fraud vitiates every transaction," and that, generally, a party may avoid liability under a contract if he was fraudulently induced into executing it. *Id.* at 315.  However, the court determined that even the defense of fraudulent inducement will be barred if there is specific language in the contract disclaiming the existence of or reliance upon specified representations. *Id.* (citing *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959)).  The *Yanakas* court discussed *Plapinger* and found that its holding did not alter this basic principle, because the defendants in *Plapinger* had negotiated a contract whereby they expressly waived any challenge to the validity of the agreement itself.  The *Yanakas* concluded that "the mere general recitation that a guarantee is 'absolute and unconditional' is insufficient under *Plapinger* to bar a defense of fraudulent inducement, and that *the touchstone is specificity*." *Id.* at 316 (emphasis added).  In the absence of such specificity, the *Yanakas* court held, dismissal of the fraud claim would be inappropriate.  Because the guaranty at issue was in a preprinted form and used routinely, and because the guaranty did not contain "disclaimers of the representations that formed the basis of [the] claim of fraudulent inducement," the *Yanakas* court held that the defendants were permitted to plead the defense of fraudulent inducement.

Defendants Forbes and Strain urge this Court to apply New York law to the instant case. Under New York law, the defendants argue, they would be permitted to assert the defenses of fraud and fraudulent inducement because the guaranty at issue does not contain specific language waiving a defense that pertains to fraud or the validity of the guaranty. They note that the waiver in this case is a general "catch-all" waiver, and that the guaranty itself states that it "shall be effective only to the extent permitted by law or public policy." The defendants argue that both Tennessee and New York recognize the general principle that "fraud vitiates all that it touches." Pursuant to this principle, they maintain, they should be permitted their day in court to prove that their debt is the result of the fraud perpetrated upon them by Quarin and Hunolt.

In response, Shelby Electric argues that the defendants' asserted defense of fraud and fraud in the inducement were waived under the broad catch-all waiver in the guaranty, because the waiver explicitly applies to "any defenses" other than actual payment of the indebtedness. Permitting waiver of those defenses does not offend public policy, Shelby Electric argues, because the language is clear and unambiguous, and the parties should be held to the terms of the guaranty. Shelby Electric emphasizes that, under settled Tennessee law, a guaranty is to be construed "as strongly against the guarantor as the sense will admit." *See Clemmer*, 519 S.W.2d at 805. It notes that this has been the law in Tennessee since the 1853 decision of *Bright v. McKnight*, 33 Tenn. (1 Sneed) 158 (Tenn. 1853), in which the Supreme Court stated that "[n]o injury can result from this doctrine, as it is in the power of guarantors to make their obligation dependent on notice, demand or any other condition they see proper, for their own protection and safety." *Bright*, 33 Tenn. (1 Sneed) at 168. Shelby Electric distinguishes the line of cases on which the defendants rely, arguing that New York's approach to guaranty law is more liberal than Tennessee's approach. In contrast to Tennessee, Shelby Electric claims, under New York jurisprudence, strict construction of a guarantee occurs only "after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch*, 188 F.3d 31, 34 (2d Cir. 1999) (quotation omitted).

As the parties acknowledge, the issue of whether a defense of fraud or fraudulent inducement can be waived under the general waiver of "any defenses" in a guaranty is an issue of first impression in Tennessee. As noted above, New York will generally recognize the waiver of a defense of fraud or fraudulent inducement only if the language of the waiver is sufficiently specific to encompass the fraud defense. *See Yanakas*, 7 F.3d at 317-18; *see also JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 189 F. Supp.2d 24, 28 (S.D.N.Y. 2002) (holding that a broad disclaimer does not preclude the defenses of fraudulent inducement or fraudulent concealment); *PGA Mktg., Ltd. v. Windsor Plumbing Supply, Inc.*, 124 A.D.2d 576, (N.Y. 1986) (stating that a waiver "of the right to assert any defense, offset or counterclaim" would not preclude a defense of fraud in the inducement). Courts in other states faced with the interpretation of a waiver-of-defenses provision have also scrutinized the specificity of the waiver provision in the contract to determine whether the defense of fraud or fraudulent inducement had been expressly waived. *See, e.g., MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 214-18 (3d Cir. 2005) (determining, under Delaware law, that the defendants were precluded from asserting a fraudulent inducement defense when the defense of fraud was specifically and unambiguously waived in the insurance policy at issue); *Dakota Partners,*

***L.L.P. v. Glopak, Inc.***, 634 N.W.2d 520, 524 (N.D. 2001) (concluding that "an analysis of the language of the waiver is necessary" to determine whether the defense of fraud has been specifically waived); ***Sec. Holding v. Johnson***, 231 N.W. 536, 538 (S.D. 1930) (determining that a defendant is not automatically estopped from raising a fraudulent inducement defense, even if the note contained a waiver-of-defenses clause).

In this case, the language in the guaranty states that the defendants agree to waive "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness." This is a basic "catch-all" waiver provision that appears to be boilerplate language in guaranties used routinely by the Bank.[3] In the litany of defenses specifically waived, there is no mention of a waiver of the defenses of fraud or fraudulent inducement.

Furthermore, the guaranty in this case contains additional language that, "[i]f any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy." It is well settled in Tennessee that the courts of our State will not be utilized to enforce a contract which is the product of fraud; indeed, fraud vitiates all that it touches. The Tennessee Supreme Court has underscored the effect of fraud on transactions:

> Fraud vitiates and avoids all human transactions, from the solemn judgment of a court to a private contract. It is as odious and as fatal in a court of law as in a court of equity. It is a thing indefinable by any fixed and arbitrary definition. In its multiform phases and subtle shapes, it baffles definition. It is said, indeed, that it is part of the equity doctrine of fraud not to define it, lest the craft of men should find ways of committing fraud which might evade such a definition. In its most general sense, it embraces all acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. A judicial proceeding in rem, while generally binding upon all persons, is no more free from the fatal taint of fraud than a proceeding in personam, or an individual contract. When once shown to exist, it poisons alike the contract of the citizen, the treaty of the diplomat, and the solemn judgment of the court.

***New York Life Ins. Co. v. Nashville Trust Co.***, 292 S.W.2d 749, 754 (Tenn. 1956) (citations and quotations omitted); ***see also Brandon v. Wright***, 838 S.W.2d 532, 534 (Tenn. Ct. App. 1992); ***Winstead v. First Tenn. Bank N.A.***, 709 S.W.2d 627, 631 (Tenn. Ct. App. 1986); ***Hunt v. Walker***, 483 S.W.2d 732, 735 (Tenn. Ct. App. 1971). Because a guaranty is to be construed strongly against the guarantors, it is important that such a solemn obligation not be obtained by the use of fraud. Under these circumstances, we conclude that the defendants should have been permitted to assert

---

[3]There is no evidence that the individual provisions in this guaranty were negotiated by the defendants or other guarantors. According to the affidavits in the record, the Bank submitted the affidavits to the guarantors who, in turn, signed the documents they were given.

the defenses of fraud and fraudulent inducement in this case, particularly in the absence of a specific waiver of those defenses.[4]

For the same reasons, we conclude that the trial court erred in failing to grant the defendants' motion to alter or amend its decision to grant summary judgment in favor of Shelby Electric. Rather, the trial court should have permitted the defendants to assert the defenses of fraud and fraudulent inducement and should have considered the defendants' motion to amend their answer. All other issues raised in this appeal are pretermitted.

The decision of the trial court is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs on appeal are to be taxed to Appellee Shelby Electric Company, Inc., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[4]Because the waiver-of-defenses provision in this case does not contain specific language waiving the defenses of fraud or fraudulent inducement, we need not determine whether a specific waiver of those defenses would be enforceable under Tennessee law. *See, e.g., Douglas v. Tonigan*, 830 F. Supp. 457, 462 (N.D. Ill. 1993) (declining to enforce, under Illinois law, the express waiver of a defense of fraud in a guaranty, even though Illinois courts generally enforce unambiguous waivers of defenses in guaranties).