# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 5, 2022 Session

## NEW DAIRY KENTUCKY, LLC v. MIKE TAMARIT

**Appeal from the Chancery Court for Robertson County**
**No. CH16-CV-79   Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2021-00091-COA-R3-CV
_____

This is an action by a dairy on a sworn account against the former owner of a dairy distributor who signed a personal guaranty that obligated him to pay any past-due debts accrued by the distributorship to the plaintiff dairy. When the former owner signed the personal guaranty, he was the sole member/owner of the distributorship; however, he sold his membership interest in the distributorship in May 2015. At the time of the sale, the distributor owed $60,484.95 to the plaintiff dairy. One month later, when the plaintiff dairy learned of the sale, it created a new account for the distributor and sent both the distributor and the guarantor a demand for payment of the old account balance, the amount owing when the guarantor sold his membership interest in the distributor. Neither the distributor nor the guarantor paid the old account balance, and the dairy sued them both. The dairy later voluntarily nonsuited the distributor, with whom the dairy was continuing to do business under the new account number, leaving the guarantor as the sole defendant. Thereafter, the trial court granted the dairy's Motion for Summary Judgment as to the guarantor's liability and held an evidentiary hearing on damages. After the hearing, the court entered a judgment against the guarantor for $130,102.12, including the principal debt, prejudgment interest, and attorney's fees. On appeal, the guarantor argues that the creditor breached its duty of good faith and fair dealing by not seeking payment from the distribution company. We disagree. The personal guaranty obligated the guarantor to pay all amounts not paid by the distributor, whether or not the dairy sought payment from the distributor. Thus, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and TIMOTHY L. EASTER, JJ., joined.

Dan E. Huffstutter, Nashville, Tennessee, for the appellant, Mike Tamarit.

Tyler Christopher Brown and Christopher Wilson Conner, Maryville, Tennessee, for the appellee, New Dairy Kentucky, LLC.

**OPINION**

Borden Dairy Kentucky, LLC ("Plaintiff") is a producer of dairy products. In January 2014, Mike Tamarit ("Defendant") signed a credit application and terms agreement with Plaintiff on behalf of Borden Southern Distribution, LLC ("BSD"), pursuant to which BSD was authorized to distribute Plaintiff's dairy products within a specified region. At the same time, Defendant signed a personal guaranty that obligated him to pay any amounts not paid by BSD. Defendant was the original owner of all membership interests in BSD, a limited liability company, and was the sole member—sole owner—of BSD when the agreements were signed.

Acting pursuant to the agreements, Plaintiff and BSD proceeded to do business together. By the end of May 2015, BSD owed Plaintiff $60,484.95 on an open account. A few months later, Plaintiff learned that Defendant had sold his membership interest in BSD to a third party while BSD continued its distribution relationship with Plaintiff.[1]

After learning that Defendant had sold his membership interest in BSD, Plaintiff created a new account for BSD, effective June 1, 2015. Plaintiff then sent a demand for payment on the old account for the amount owed as of the end of May 2015 to both BSD and Defendant. Neither BSD nor Defendant paid the debt. Thus, in February 2016, Plaintiff commenced this action by filing a Complaint on Sworn Account against Defendant and BSD under Tennessee Code Annotated § 24-5-107.[2] Defendant filed an answer in March

---

[1] Defendant sold his membership interests in BSD to Joseph Beader. Mr. Beader was never a party to this action and is not involved in this appeal.

[2] Tennessee Code Annotated § 24-5-107 provides:

(a) An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party sought to be charged, unless that party on oath denies the account or except as allowed under subsection (b).

(b) The court shall allow the defendant orally to deny the account under oath and assert any defense or objection the defendant may have. Upon such denial, on the plaintiff's motion, or in the interest of justice, the judge shall continue the action to a date certain for trial.

2018, generally denying liability for the debt. For reasons not explained in the record, Plaintiff later voluntarily nonsuited BSD.

After conducting discovery, Plaintiff moved for summary judgment based on the undisputed fact that Defendant signed the personal guaranty as part of the distribution agreement. Following a hearing, the trial court granted summary judgment as to liability but reserved ruling on damages until an evidentiary hearing could be held.

At the evidentiary hearing in November 2020, Plaintiff introduced business records for the old BSD account via Plaintiff's witness and the records' custodian, Ron Knox. After the hearing, the trial court found that the records and Mr. Knox's testimony established that, as of May 29, 2015, the principal amount owed on the account was $60,484.95, and that no payment had been made on the account since that time. After calculating interest and fees, the trial court entered a final judgment against Defendant for $130,102.12; including the principal amount of $60,484.95; prejudgment interest of $54,495.94; and $15,121.23 in attorney's fees. The court ordered that post-judgment interest would accrue at the statutory rate of 5.25% per year.

This appeal followed.

## ISSUES

Plaintiff raises one issue on appeal: Did the trial court err in holding Defendant was personally liable for the debt because of Plaintiff's election not to seek collection of the debt from BSD?

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Thus, we must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.* In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A fact is material if it is determinative of the claim or defense at issue. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin*, 271 S.W.3d at 83. Tennessee Rule of Civil Procedure 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph" and "supported by a specific citation to the record." *Id.*

When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Rye*, 477 S.W.3d at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.*

ANALYSIS

Defendant contends that Plaintiff violated its duty of good faith and fair dealing by assigning a new account number for BSD after Defendant sold his membership interest and electing to collect the old account balance from only Defendant while continuing to do business with BSD under the new account. Specifically, Defendant asserts in his appellate brief:

> For unknow[n], nonlegal reasons Plaintiff unilaterally elected to seek collection of the Indebtedness only from [Defendant] while ignoring [BSD]; all the while continuing to sell Dairy Products to [BSD]. The Guaranty Agreement was a pay if not paid arrangement which would be subject to the contract princip[les] of good faith and fair dealings. Plaintiff's actions toward [Defendant] clearly evidence Plaintiff's violations of said good faith and fair dealing princip[les].

The fundamental goal of contract interpretation is to determine and implement the parties' intent. *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). To determine the parties' intent, we look first to "the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011)). When interpreting a personal guaranty, "the words of a guaranty are to be taken as strongly against the guarantor as the sense will admit." *Shelby Elec. Co. v. Forbes*, 205 S.W.3d 448, 452–53 (Tenn. Ct. App. 2005) (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804–05 (Tenn. 1975)).

We agree with Defendant that the personal guaranty obligated him to pay BSD's debt only if BSD did not pay the same. The guaranty provided as follows:

I, (we)_____, for and in consideration of your extending credit at my request to (Name of Company) _____ (the "Company"), personally guarantee prompt payment of any obligation of the company to BORDEN DAIRY and each of its subsidiaries and affiliated entities ("Seller"), whether now existing or hereinafter incurred, and **I further agree to bind myself to pay on demand any sum which is due by the Company to Seller whenever the Company fails to pay same**. It is understood that this guaranty shall be an absolute, continuing and irrevocable guaranty for such indebtedness of the Company. [3]

(Emphasis added).

The record shows that BSD failed to pay sums due to Plaintiff after Plaintiff sent BSD a demand letter in September 2015. This fact was undisputed. Thus, under the language of the guaranty, Defendant had to pay the same on demand. But Defendant now argues that he is excused from his personal guaranty because BSD breached its implied duty of good faith and fair dealing by nonsuiting BSD in this action. We disagree.

The implied duty of good faith and fair dealing accompanies all contracts. *Wallace v. Nat'l Bank of Com.*, 938 S.W.2d 684, 686 (Tenn. 1996). It "protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (citing *Lopez v. Taylor*, 195 S.W.3d 627, 633 (Tenn. Ct. App. 2005)). Thus, the scope of the implied duty of good faith and fair dealing "depends upon the individual contract in each case." *Wallace*, 938 S.W.2d at 686 (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)).

Here, the guaranty provided that Defendant was waiving any right to require Plaintiff to collect from BSD before seeking payment from Defendant:

I expressly waive presentment, demand, protest, notice of protest, dishonor, diligence, notice of default or nonpayment . . . . **I further waive any right to require Seller to proceed against, or make any effort at collection of**

---

[3] Defendant states that there is an ambiguity in the agreement because of the blanks that were left empty. We find this argument unavailing because the trial court found that the credit application, terms agreement, and guaranty constituted one contract, and Defendant has not appealed that finding. When interpreting a contract, "[t]he entire written agreement must be considered." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). The credit application clearly identified BSD as the applicant and Defendant as the "President" of BSD. Defendant signed the terms agreement as "President" and, on the same page, signed the personal guaranty as "Guarantor." Thus, we find no ambiguity in the personal guaranty.

**the guarantied indebtedness from the Company or any other party liable for such indebtedness**.

(Emphasis added).

Thus, we find that the implied duty of good faith and fair dealing did not obligate Plaintiff to pursue collection efforts against BSD before seeking payment from Defendant. The duty of good faith and fair dealing protects the parties' "right to receive the benefits of their agreement." *Long*, 221 S.W.3d at 9. Requiring Plaintiff to proceed against BSD was not one of those benefits.

For these reasons, we agree with the trial court's finding that Defendant is liable for the sums that were due.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Mike Tamarit.

_____
FRANK G. CLEMENT JR., P.J., M.S.