IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 13, 2025 Session

## TED PHILLIPS v. NATIONAL AGGREGATES, LLC, ET AL.

**Appeal from the Circuit Court for Anderson County**
No. B9LA0130          John D. McAfee, Judge[1]

_____

**No. E2024-01492-COA-R3-CV**

_____

The plaintiffs appeal from the trial court's dismissal of their claims against two sets of defendants. We now affirm, holding that this court does not have jurisdiction to consider the appeal filed more than 30 days from the entry of the final orders appealed from. We also affirm the dismissal of a counter-complaint filed against the plaintiffs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Dail R. Cantrell, Clinton, Tennessee, for the appellants, Ted Phillips, Jr. and Kristi Hackworth Phillips.

Gregory Brown and G. Alan Rawls, Knoxville, Tennessee, for the appellees, Tom Badgett, Gary Hibben, David Everhart, Franda Webb Everhart, Jerry Hackworth, Lisa Hackworth, Plateau Sand Partnership, and National Aggregates, LLC.

Christopher T. Cain and Michael R. Franz, Knoxville, Tennessee, for the appellees, Raymond E. Lacy, James H. Price, and Lacy, Price, & Wagner, P.C.

### OPINION

### I.     BACKGROUND

On July 1, 2005, Jerry and Lisa Hackworth entered into a partnership agreement with Ashley Sexton and Dail R. Cantrell for the purpose of acquiring land and developing

---

[1] Sitting by interchange.

a sand mining operation known as Plateau Sand.  In accordance with the agreement, the Hackworths' daughter and son-in-law, Kristi Hackworth Phillips and Ted Phillips Jr. ("Plaintiffs"), were provided a 5% interest in the company that entitled them to a portion of the proceeds in the event that Plateau Sand was sold.  In September 2008, the Hackworths purchased Ms. Sexton and Mr. Cantrell's 45% partnership interest in Plateau Sand.  Plaintiffs loaned their relatives $50,000 to facilitate the purchase.

Years later, Plateau Sand was in the midst of bankruptcy proceedings.  The property itself was encumbered by a deed of trust securing millions of dollars owed to Clayton Bank & Trust.  To avoid foreclosure, the Hackworths began negotiations with National Aggregates, LLC ("NAL") to sell Plateau Sand for $6.8 million dollars, the value assigned by the bankruptcy court.  On May 9, 2014, Plaintiffs filed suit against the Hackworths, requesting repayment of their $50,000 loan, payment of a $200,000 injury settlement agreement between Mr. Phillips and Mr. Hackworth, and 5% from the expected sale of Plateau Sand.  Plaintiffs recorded a lien lis pendens against the property; however, the deed conveying the property from the Hackworths to NAL had already been recorded.  The fees and full transfer tax were also paid at the time of recording.

Plaintiffs settled their action with the Hackworths on February 3, 2015, in accordance with the following terms:

1.      Defendant Plateau Sand, the holder of a Promissory Note ("Note") dated September 1, 2014, in the principal amount of $6,800,000.00, payable by [NAL], shall instruct NAL to remit exactly the total sum of $350,000.00 plus interest at four percent (4.00%) per annum (and no more), jointly payable to Plaintiffs and their counsel of PACI record, from and out of the installment payments due under the Note which are scheduled to begin September 1, 2017.

2.      The Plaintiffs, jointly, shall be so paid only after (a) payment in full to all listed creditors of any of the Defendants under confirmed Chapter 11 Plans as ordered by the U.S. Bankruptcy Court for the Eastern District of Tennessee, Northern Division [], (b) other creditors of Defendants and (c) appropriate withholding for any and all taxes relating to the sale of the Property, all of which payments shall not exceed $3,800,000.00.  Remittance shall be made payable to Plaintiffs and their counsel of record and sent in care of such counsel.

3.      All claims arising from the allegations of this civil action including, but not limited to, those for profits, for loans, and for personal injury are dismissed with full prejudice, it being intended that Plaintiffs' sole remedy be through collection of $350,000.00, plus interest at four percent (4.00%) per annum, as stated herein.

4.      All liens lis pendens filed of record after the sale of the Property to NAL could not and did not in any way impair the title to the Property vested in NAL and all such liens lis pendens shall be deemed nullified, released and of no force nor effect ab initio.

Still having received no money from the agreement, on May 9, 2019, Plaintiffs attempted to engage in post-judgment discovery and issued subpoenas to those involved in the property sale. The subpoenas commanded them to appear for a deposition at their house on June 26, 2019, and to produce documents related to NAL, including financial records, tax information, records showing whether the Hackworths held any ownership interest in NAL, and documentation showing why nothing had yet been paid to them as agreed in the Plateau Sand settlement. Acting without counsel, Plaintiffs questioned members of NAL, who incorrectly advised that attorneys who served as counsel for the Hackworths were members of NAL, that the Hackworths were also members of NAL, and that NAL had already paid Mr. Hackworth in excess of $300,000 as "maintenance."

Following these depositions, Plaintiffs sent a letter and "courtesy copy" of an impending lawsuit for intentional misrepresentation to NAL; its members, Tom Badgett, Franda Webb Everhart, David Everhart, and Gary Hibben (collectively "Defendants"); and Raymond Lacy and James Price ("Attorneys"), who served as counsel for the Hackworths, and whose law firm held an interest in NAL.[2] In the letter, Plaintiffs claimed that their post-judgment discovery had revealed that the agreed final order contained several false and fraudulent statements designed to induce Plaintiffs into settling the lawsuit. Plaintiffs offered to either accept $500,000 to resolve the discrepancies or engage in mediation prior to the filing of the lawsuit. Defendants and Attorneys did not agree to Plaintiffs' terms and vehemently denied the allegations, advising Plaintiffs that financing to begin sand mining operations and to fulfill its debt to Plateau Sand had not yet been secured and that the threat of litigation would undermine their pending application for funding.

On September 4, 2019, Plaintiffs filed the instant action, claiming that NAL, its members, and Attorneys deceived them as to the sale of the real property to NAL in an effort to induce them to dismiss the litigation. The law firm Lacy, Price & Wagner, P.C., was later added as a defendant. Defendants and Attorneys filed a motion for sanctions pursuant to Rule 11.03 of the Tennessee Rules of Civil Procedure, alleging, inter alia, that the claims were brought for an improper purpose and were not warranted by existing law or the establishment of new law and were also not supported by any evidence. They alleged that Plaintiffs threatened and then filed this litigation for the sole purposes of undermining the pending financing of the sale and extorting money from NAL and its members.

Defendants moved to dismiss. Attorneys filed an answer, counter-complaint for breach of contract, abuse of process, and defamation, and later moved for summary

---

[2] This interest was acquired as a partial payment for Attorneys' legal representation.

judgment. Attorneys explained that NAL made significant progress in its payment to Plateau Sand's creditors; however, NAL was unable to pay any amount on the note owed to Plateau Sand, which carried a current balance of approximately 3 million dollars. Accordingly, Plaintiffs were not entitled to collect any funds in accordance with the settlement terms as agreed. Attorneys noted that Plaintiffs signed a release agreement in settlement of the claim between Mr. Phillips and Mr. Hackworth, which provided

> By entering into this Release Agreement, Phillips hereby releases and forever discharges [Plateau Sand Partnership, Jerry Hackworth, and Lisa Hackworth] . . . and any of their attorneys . . . from any and all liability on account of any and all claims, rights, damages, demands, costs, expenses, or cause of action which have arisen, or may arise, from the facts, transactions and circumstances involved in, arising out of or in connection with the Complaint filed in the Civil Action or otherwise through the date hereof . . .

> * * *

> No representation, promise, inducement or statement of intention has been made by either party regarding this release of claims between Phillips and Hackworth which is not embodied in this Release Agreement, and neither party shall be bound by; or be liable for, any alleged representation, promise, inducement or statement of intention not embodied herein.

In 2020, the trial court consolidated the original action against the Hackworths and Plateau Sand with the current fraud action against NAL, its members, and Attorneys; ordered that the Rule 12.02(6) motions to dismiss be "held in abeyance in order to allow the parties to conduct discovery;" held Attorneys' summary judgment motion in abeyance for the same purpose; and denied the Rule 11 motion for sanctions, advising that the motion may be renewed following discovery.

Over the next two years, the parties took written discovery and depositions. Defendants then sought an adjudicatory hearing on their dispositive motions. Following a hearing, the trial court ultimately found that Defendants' motions to dismiss were well-taken, as was the motion for summary judgment filed by Attorneys. The court granted the motions by order, dated October 17, 2022, finding as follows:

> Specifically, the court concludes from the record before it that [Plateau Sand] sold the Property to [NAL], on September 1, 2014, for $6,800,000.00, given in the form of a promissory note. There is no genuine issue of material fact as to the occurrence of that sale. Therefore, the representation that the property had been sold was not false.

The record reflects that [NAL] validly purchased the property but has had difficulty obtaining the financing needed to fully satisfy its indebtedness under the promissory note. It is undisputed that the deed was recorded and that the transfer tax was paid. It is also undisputed that debts of Plateau Sand, including the mortgage debt owed to Clayton Bank, were satisfied. This amounted to millions of dollars paid pursuant to the promissory note. The fact that [NAL] has thus far been unable to fully satisfy its obligations under the note so as to pay money to Plateau Sand is not evidence that the sale did not take place. It is merely evidence that its business expectations did not bear out.

The court certified the order as a final judgment, finding "no just reason for delay in entry of a final judgment disposing of [P]laintiffs' claims as to all defendants." At that point, only Attorneys' counter-complaints (breach of contract, abuse of process, and defamation) remained pending.

On November 10, 2022, Plaintiffs moved for permission to file an interlocutory appeal rather than filing an appeal as of right from the October 2022 judgment. The trial court granted permission; however, a panel of this appellate court denied the application, holding that it "was not an appropriate case in which to grant interlocutory review." On February 21, 2023, Plaintiffs filed a "motion to reconsider" which read, "pursuant to Rule 60 of the Tennessee Rules of Civil Procedure, [Plaintiffs] move this Honorable Court for an Order to Reconsider the Order Granting the Defendants' Motion to Dismiss and Motion for Summary Judgment." Defendants opposed the motion to reconsider, and Plaintiffs ultimately withdrew their motion.

Defendants then moved for attorney fees and costs pursuant to Tennessee Code Annotated section 20-12-119(c) on January 29, 2024. By then, Defendants had incurred over $160,000 in fees and expenses. However, because the trial court held the Rule 12.02(6) motions in abeyance pending discovery, Defendants were limited to requesting $10,000 per plaintiff under Tennessee Code Annotated section 20-12-119(c). Defendants' motion for fees proceeded to a hearing and was unopposed. By order entered on April 10, 2024, the trial court awarded them $20,000 in attorney fees. This order was also certified as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

At that point, the court still had not ruled on Attorneys' counter-complaint against Plaintiffs, who previously moved for summary judgment dismissal of such claims. The trial court heard this summary judgment motion but held it in abeyance to give Attorneys time to determine whether they would agree to voluntarily dismiss their claims to allow Plaintiffs time to pursue an appeal.

Instead, Plaintiffs filed another motion to reconsider "pursuant to Rule 60 of the Tennessee Rules of Civil Procedure," this time with respect to the April 2024 judgment

granting attorney fees, asking the trial court to reconsider the award "until there is a final Order as to all issues and claims." That same day, Plaintiffs filed a motion for stay of execution, stating again that the order granting attorney fees was not a final judgment.

On July 25, 2024, Defendants moved for Rule 11.03 sanctions against Plaintiffs and their counsel based on the foregoing motions, arguing that the orders were clearly marked as final judgments in accordance with Rule 54.02. The trial court heard the foregoing motions on August 8, 2024. By order entered September 30, 2024, the court granted Plaintiffs' summary judgment motion on Attorney's counter-complaint, allowed Plaintiffs to withdraw their second motion to reconsider, stayed execution of the order granting attorney fees, and denied the Defendants' request that Plaintiffs be required to post a supersedeas bond. The court declined to rule on Defendants' motion for sanctions. It is from this order that Plaintiffs tried to file an appeal as of right on October 1, 2024.

By order entered January 13, 2025, a panel of this court found that the September 2024 order was not final because Defendants' July 2024 motion for sanctions and a much older motion for contempt were still pending. By order entered February 4, 2025, the trial court allowed Plaintiffs to withdraw their contempt motion and denied Defendants' motion for sanctions. The action is now before this court for consideration of the issues presented.

## II.   ISSUES

We consolidate and restate the determinative issues on appeal as follows:

A.      Whether this court has jurisdiction to consider Plaintiffs' appeal from the trial court's grant of summary judgment, entered on October 17, 2022.

B.      Whether this court has jurisdiction to consider Plaintiffs' appeal from the trial court's award of attorney fees, entered on April 10, 2024.

C.      Whether the trial court erred in granting summary judgment in favor of Plaintiffs on the counter-complaints asserted by Attorneys.

D.      Whether the trial court abused its discretion in denying an award of sanctions against Plaintiffs.

E.      Whether Defendants are entitled to an attorney fee award on appeal.

## III.    DISCUSSION

### A. & B.

The final orders from which Plaintiffs seek to appeal the grant of summary judgment and the order of attorney fees were entered on October 17, 2022, and April 10, 2024, respectively.  These orders were both certified as final judgments pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, which provides, in pertinent part, as follows:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Such certification by the trial court creates a final judgment that is appealable as of right. *In re Estate of Henderson*, 121 S.W.3d 643, 646 (Tenn. 2003) (citation omitted).  A notice of appeal must "be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). "The thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil cases." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *see also Cobb v. Beier*, 944 S.W.2d 343, 344 n.2 (Tenn. 1997).  This court is not at liberty to waive an untimely appeal.  *See* Tenn. R. App. P. 2; *Arfken & Assocs., P.A. v. Simpson Bridge Co., Inc.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002); *Am. Steinwinter Investor Group v. Am. Steinwinter, Inc.*, 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997); *Jefferson v. Pneumo Services Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985).

Plaintiffs agree that the orders appealed from were certified as final; however, they suggest that Rule 54.02 was not applicable to either order because Attorneys' counter-complaint remained pending.  To meet the first requirement under Rule 54.02, "the order at issue must dispose of at least one entire claim *or* resolve all of the claims against at least one party." *E Sols. for Buildings, LLC v. Knestrick Contractor, Inc*., No. M2017-00732-COA-R3-CV, 2018 WL 1831116, at *3 (Tenn. Ct. App. Apr. 17, 2018) (emphasis added). "For purposes of Rule 54.02, a single 'claim' is defined as 'the aggregate of operative facts which give rise to a right enforceable in the courts,' even though different theories of liability may have been asserted." *Adkins v. Adkins*, No. M2018-00890-COA-R3-CV, 2020 WL 9602029, at *4 (Tenn. Ct. App. Dec. 22, 2020).  Thus, "separate causes of action or counts in a complaint that arise out of the same series of closely related factual occurrences constitute one claim for the purposes of Rule 54.02." *Carr v. Valinezhad*, No. M2009-00634-COA-R3-CV, 2010 WL 1633467, at *3 (Tenn. Ct. App. Apr. 22, 2010).  From our review, we note that the October 2022 judgment resolved (1) Plaintiffs' claims against all defendants and that the April 2024 judgment resolved (2) Defendants' claim for

attorney fees against Plaintiffs, leaving only (3) Attorneys' counter-complaint against Plaintiffs unresolved.

Plaintiffs' claims against Defendants were all in the nature of fraud, based on alleged misrepresentations made in the prior litigation between Plaintiffs, the Hackworths, and Plateau Sand. The counterclaims asserted by Attorneys against Plaintiffs are separate claims that do not arise out of the "same series of closely related factual occurrences." *See Carr*, 2010 WL 1633467, at *3. Specifically, Attorneys counterclaimed for breach of contract based on Plaintiffs' suing them in violation of a prior release agreement, for abuse of process based on Plaintiffs' improper use of "post-judgment" discovery, and for defamation based on a letter written by Plaintiffs' counsel. These causes of action are not based on the same facts as the fraud alleged by Plaintiffs.

Plaintiffs filed their notice of appeal on October 1, 2024, well beyond the 30-day time limit for filing a notice of appeal from either the October 2022 judgment or the April 2024 judgment. Neither the filing of the interlocutory appeal, which was not granted by this court, nor the filing of motions to reconsider, which were ultimately withdrawn, operated to extend the 30-day time period for filing an appeal as of right from the October judgment. Accordingly, we must hold that we lack subject matter jurisdiction to consider the trial court's final judgments entered on October 17, 2022, and on April 10, 2024.

C.

Attorneys argue that the trial court erred in granting summary judgment on their counter-complaint in favor of Plaintiffs. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted). Attorneys counterclaimed for breach of contract based on Plaintiffs' suing them in violation of a prior release agreement, for abuse of process based on Plaintiffs' improper use of "post-judgment" discovery, and for defamation based on a letter written by Plaintiffs' counsel. We will address each claim in turn.

*Breach of contract*

Attorneys alleged that Plaintiffs breached the release agreement, which provided, in pertinent part, as follows:

> By entering into this Release Agreement, Phillips hereby releases and forever discharges [Plateau Sand Partnership, Jerry Hackworth, and Lisa Hackworth] . . . and any of their attorneys . . . from any and all liability on account of any and all claims, rights, damages, demands, costs, expenses, or cause of action which have arisen, or may arise, from the facts, transactions and circumstances involved in, arising out of or in connection with the Complaint filed in the Civil Action or otherwise through the date hereof . . .
>
> * * *
>
> No representation, promise, inducement or statement of intention has been made by either party regarding this release of claims between Phillips and Hackworth which is not embodied in this Release Agreement, and neither party shall be bound by; or be liable for, any alleged representation, promise, inducement or statement of intention not embodied herein.

Attorneys filed suit as a third-party beneficiary to the release agreement, arguing that the agreement precluded recovery on the action filed against them for fraud. They now claim that whether Plaintiffs had a good faith basis to institute an action to set aside the release agreement is of no consequence when the trial court denied the claims of fraud, thereby establishing their claim of breach of contract. Attorneys cite no legal precedent in support of their argument but claim that Plaintiffs' position is unsupported by legal authority.

Tennessee law has "long recognized" that claims for fraudulent misrepresentation in inducement of a contract may be filed regardless of whether the plaintiff has signed a release agreement in a contract, particularly in the absence of a specific waiver of fraud or fraudulent inducement. *Ewan v. Hardison Law Firm*, No. W2011-00763-COA-R3-CV, 2012 WL 1269148, at *7 (Tenn. Ct. App. Apr. 16, 2012); *see also Shelby Elec. Co., Inc. v. Forbes*, 205 S.W.3d 448, 455–56 (Tenn. Ct. App. 2005) ("It is well settled in Tennessee that the courts of our State will not be utilized to enforce a contract which is the product of fraud; indeed, fraud vitiates all that it touches."). We decline to hold that the failure to establish fraud automatically entitles a defendant to recovery for breach of the release agreement. Instead, we, like the trial court, hold that Plaintiffs were permitted to file such claims under established Tennessee law without breaching the release agreement and that the result of any such claims is dependent upon the individual circumstances in each individual case. We affirm the court's summary dismissal of this claim.

*Abuse of process*

Attorneys next take issue with the court's summary judgment dismissal of their claim for abuse of process based on Plaintiffs' improper use of "post-judgment" discovery. "The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." *Priest v. Union Agency*, 125 S.W.2d 142, 143–44 (Tenn. 1939). We, like the trial court, hold that Rule 69 of the Tennessee Rules of Civil Procedure "permits judgment creditors to engage in post-judgment discovery using the same discovery methods that are used in pre-trial discovery." *First Am. Tr. Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 n. 8 (Tenn. Ct. App. 2001). Here, Plaintiffs held an agreement entitling them to the payment of $350,000 based upon the successful completion of the sale of Plateau Sand to NAL and other conditions specified in the order. Plaintiffs were thereby permitted to engage in post-judgment discovery to ascertain the status of the agreement and their pending payment provided therein. We affirm the court's summary dismissal of this claim.

*Defamation*

Lastly, Attorneys argue that the court erred in its summary dismissal of their claim for defamation. To establish a prima facie case of defamation, "the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation." *Davis v. Covenant Presbyterian Church of Nashville*, No. M2014-02400-COA-R9-CV, 2015 WL 5766685, at *3 (Tenn. Ct. App. Sept. 30, 2015) (perm. app. denied). Attorneys' claim is based upon the letter sent to Defendants and Attorneys, advising them of the fraud allegations and requesting settlement or mediation. While the letter was arguably "published" to someone other than Attorneys, the record establishes that Plaintiffs did not act with knowledge that their statements were false and defamatory. *See generally* Black's Law Dictionary (12th ed. 2024) (defining "publish" as the communication of defamatory words "to someone other than the person defamed"). We affirm the court's summary dismissal of this claim.

D.

Rule 11.02 of the Tennessee Rules of Civil Procedure provides,

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or

unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)     the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The requesting party must make a motion for sanctions "separately from other motions or requests" and "must describe the specific conduct alleged to violate subdivision 11.02." Tenn. R. Civ. P. 11 .03(1)(a). Additionally, a motion for sanctions must be served "as provided in Rule 5" but must not be "filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriated corrected." Tenn. R. Civ. P. 11.03(1)(a). A trial court is authorized to impose sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated." Tenn. R. Civ. P. 11.03.

On appeal, a trial court's decision to impose sanctions pursuant to Rule 11 is reviewed under an abuse of discretion standard. *Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008). This court's "review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the [party's] conduct." *Id.* This court is to "apply a standard of 'objective reasonableness under the circumstances' when determining whether conduct is sanctionable under Rule 11." *Id.* at 202 (citing *Hooker v. Sundquist*, 107 S.W.3d 532, 536 (Tenn. Ct. App. 2002)). In considering whether sanctions are appropriate, the court must determine "whether such conduct was reasonable at the time the document was signed." *Marra v. Bank of New York*, 310 S.W.3d 329, 341 (Tenn. Ct. App. 2009).

Here, Defendants filed two separate motions for sanctions, one in response to the complaint itself and then a second motion in response to Plaintiffs' continued filing of

- 11 -

motions after the October 2022 and April 2024 judgments were certified as final. Defendants argue that the trial court failed to fully consider the motions and denied them based upon a standard practice of denying such motions. They further claim that the trial court failed to issue sanctions in an effort to assist Plaintiffs' counsel in an inquiry from the Tennessee Board of Professional Responsibility concerning the filing of this action. The record does not support Defendants' allegations. Following our review, we note that the trial court ultimately determined that Plaintiffs' filing of the complaint was reasonable at the time the document was signed, despite the fact that the court ultimately dismissed the action. The court stated as such multiple times in the record. The court likewise found that Plaintiffs possessed a sound basis in support of their filing of procedural motions. We find no abuse of discretion.

E.

The Appellees have moved for attorney fees on the grounds that the appeal is frivolous. Tennessee Code Annotated section 27-1-122 provides for the award of attorney fees when a party is required to respond to a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122; *First Cmty. Mortg. v. Appraisal Servs. Grp.*, 644 S.W.3d 354, 367-368 (Tenn. Ct. App. 2021). "Determining whether to award [section 27-1-122] damages is a discretionary decision." *Id.* at 368; *see Young v. Barrow*, 130 S.W.3d 59 (Tenn. Ct. App. 2003). We respectfully decline to find that this appeal is frivolous for purposes of awarding damages under section 27-1-122.

## IV. CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court and remand for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed one-half to the appellants, Ted Phillips, Jr. and Kristi Hackworth Phillips, and one-half to the appellees, Raymond E. Lacy, James H. Price, and Lacy, Price, & Wagner, P.C.

s/John W. McClarty
JOHN W. McCLARTY, JUDGE